. JOSEPHINE P. WALDRON, Admx. *et al.*

*v.*

SEROTIA A. ALEXANDER.

*Filed at Ottawa March 30, 1891.*

1. CONTRACT—EVIDENCE—*proof to show reasonableness of contract price.* In an action to recover upon an alleged parol contract for services rendered in the care of the plaintiff's parents, and the making of the alleged contract is denied, and the amount of the compensation alleged to have been promised is claimed to be unreasonable and improbable, the party seeking to recover for such services may prove her qualifications as a teacher of music, and the value of her services as such, not for the purpose of a recovery on a *quantum meruit,* or for the recovery of any more or less than the contract price, but for the purpose of answering the claim that the alleged contract was an unreasonable one, and therefore improbable that it was entered into.

2. LIMITATIONS—*new promise to pay.* In a suit to establish a claim against an estate, wherein the Statute of Limitations was pleaded, an instruction that such an acknowledgment of the debt sued on in five years before suit brought as would remove the bar of the statute could not be inferred from any language or expressions of the debtor which were equivocal, vague or indeterminate, and which would lead to no certain conclusion, but that the acknowledgment and promise to pay the debt, in order to avoid the bar of the statute, must arise out of such facts as identify the debt with such certainty as will clearly determine its character, fix the amount due and show a present unqualified willingness and intention to pay it, states the law with substantial accuracy.

· 3. SAME—*payments within the period of limitation.* In such case, where the evidence shows payments made by the debtor on the debt within five years before suit thereon, with statements at the times that such payments were intended to keep his agreement alive and in force, this will clearly take the case out of the Statute of Limitations.

4. APPEAL—*reviewing the facts—finding by the Appellate Court—how far conclusive.* The rule that the decisions of the Appellate Courts upon controverted questions of fact are conclusive on this court, applies in respect to claims against the estates of deceased persons filed in the county court, which are based upon strictly legal causes of action.

5. The judgment of the Appellate Court affirming a judgment of the trial court upon a claim against an estate is final and conclusive, both in respect to the principal or ultimate facts upon which the right of recovery is claimed or ground of defense is based, and in respect to the evidentiary and subordinate facts, which are mere evidence of such principal facts.

6. INSTRUCTION—*construed—whether ignoring Statute of Limitations.* On the trial of a claim against an estate for eighteen years' services, to which the Statute of Limitations was pleaded, the court instructed the jury, that if they believed, from the evidence, that A, in his lifetime, did agree with the claimant that he would pay her a certain sum or sums if she would stay with and care for her parents, the court instructs you that such would be a lawful agreement, "and if she rendered such services according to agreement, she would have a right to collect therefor." The court, in other instructions, told the jury that the claimant was limited in her claim to five years before the filing of the claim, unless a new promise to pay within the five years was proved: *Held,* that the instruction given was upon the question of the lawfulness of the contract, and that there was no reversible error in giving the same, when taken in connection with the others given. ,

7. SAME—*not based on the evidence, etc.* An instruction which is not fairly based upon the evidence, and is argumentative, and calculated to mislead the jury, and unduly invades the province of the jury, is properly refused.

8. ERROR WILL NOT ALWAYS REVERSE—*refusing instructions.* A judgment clearly right, and authorized by the undisputed evidence, will not be reversed for error in refusing instructions, even if they were proper, when the giving of them could not have changed the result.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. A. J. EDDY, for the appellants:

On a contract for services from year to year, the Statute of Limitations begins to run at the end of each year. *Schmidt* v. *Pfau,* 114 Ill. 494; *Davis* v. *Gorton,* 16 N. Y. 255; *Butler* v. *Kirby,* 13 Wis. 188; *Mimms* v. *Sturtevant,* 18 Ala. 359; *Turner* v. *Martin,* 4 Robt. 661; Wood on Limitations, 141.

As to the acknowledgment of debt or promise to pay, that takes the case out of the statute. *Bell* v. *Morrison,* 1 Pet. 351; *Kallenbach* v. *Dickinson,* 100 Ill. 440; *Ayers* v. *Richards,* 12 id. 146; *Keener* v. *Crull,* 19 id. 189; *Carroll* v. *Forsyth,* 69 id. 127; *Wachter* v. *Albee,* 80 id. 47; *Mills* v. *Tabor,* 40 N. C. 412; *Bell* v. *Crawford,* 8 Gratt. 110; *Fisher* v. *Hess,* 9 B. Mon. 614.

Where a general indebtedness exists, a part of which is barred by the statute and a part not, a general acknowledgment will not remove the bar, because it may have been intended simply to apply to the indebtedness within the statute. Wood on Limitations, 170, 171, and cases cited.

A mere general admission by the party sought to be charged, that something was due, without reference to the particular claim in question between the parties, is not sufficient to take the demand out of the operation of the Statute of Limitations. *Pray* v. *Garcelon,* 17 Me. 145; *Buckingham* v. *Smith,* 23 Conn. 453.

A mere admission of the debt is not sufficient. *Shitler* v. *Brewer,* 23 Pa. St. 413; *Pray* v. *Garcelon,* 17 Me. 145.

The acknowledgment must be shown to relate to the par-ticular demand in question. *Baxley* v. *Gale,* 19 Ala. 151; *Walker* v. *Griggs,* 32 Ga. 119; *Smith* v. *Moulton,* 12 Minn. 352; *Buckingham* v. *Smith,* 23 Conn. 453.

A promise to settle is not sufficient. *Bell* v. *Crawford,* 8 Gratt. 110; *Spong* v. *Wright,* 9 M. & W. 629; *McClelland* v. *West,* 59 Pa. St. 487; *Braton* v. *Rockwell,* 41 Vt. 621; *Currier* v. *Lockwood,* 40 Conn. 349; *Weaver* v. *Weaver,* 54 Pa. St. 152; *Shaeffer* v. *Hoffman,* 113 id. 1; *Bloomfield* v. *Bloomfield,* 7 Ill. App. 261.

There must not be any uncertainty as to the particular debt to which the admission applies. Wood on Limitations, 151; *Eckford* v. *Evans,* 56 Miss. 18; *Landis* v. *Roth,* 109 Pa. St. 621.

The acknowledgment must be shown unmistakably to relate to the particular debt or demand which is sought to be revived by it, or the acknowledgment must be attended by circumstances which will enable a jury to ascertain definitely what debt was intended. Wood on Limitations, p. 155, and cases cited; *Hussey* v. *Kirkman,* 95 N. C. 63.

The expression of a wish to pay a debt, as, "Please send me the amount due; want to arrange and pay it off," is not sufficient.

Where a part of the indebtedness is barred by the statute and part not, a general acknowledgment will not remove the bar, because it may have been intended simply to apply to the indebtedness to clear the statute. Wood on Limitations, 170, 171; *Morgan* v. *Walton,* 4 Pa. St. 321; *Suter* v. *Shuler,* 22 id. 308; *Weisner* v. *Stein,* 97 id. 322; *Burns* v. *Boulton,* 2 C. B. 476; *Miles* v. *Fowkes,* 5 Bing. (N. C.) 455.

In order to make a money payment a part payment, within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which

a promise may be inferred to pay the remainder. Wood on Limitations, 221, 222; *Tippets* v. *Heane*, 1 C. M. & R. 252; *Smith* v. *Simms*, 9 Ga. 418.

If there is a mere naked payment of money, without anything to show on what account or for what reason the money was paid, the payment will be of no avail under the statute. If the party merely says, "Place the money to my account," without specifying any account or any debt, and the creditor appropriates the payment in part liquidation of the debt barred by the statute, without the privity or assent of the debtor, this will be of no avail as an acknowledgment of the debt by the debtor. Wood on Limitations, 225.

If there is a disputed and an undisputed debt, or if there are two debts, one barred by the statute and the other not barred, a general payment on account will be of no avail, at common law, or under the statute, because it is left uncertain to which debt the payment was intended to be applied. Wood on Limitations, 225; *Burns* v. *Boulton*, 2 C. B. 476; *Miles* v. *Fowkes*, 5 Bing. (N. C.) 455.

The burden of establishing a part payment, sufficient, as to time and other circumstances, to remove the statutory bar, is upon the plaintiff. Wood on Limitations, 225, 226.

Messrs. CRATTY BROS. & ASHCRAFT, for the appellee:

The Statute of Limitations would not begin to run until demand made, and the claim is a running account, and therefore not barred. *Payne* v. *Gardiner*, 29 N. Y. 146; *Catling* v. *Schwding*, 6 T. R. 189; *Van Swearingen* v. *Harris*, 1 W. & S. 356; *Carter* v. *Murray*, 6 Johns. Ch. 522; *Union Bank* v. *Knapp*, 3 Pick. 96; *Lucher* v. *Ives*, 6 Cow. 193; *Bass* v. *Bass*, 6 Pick. 362; *McLelland* v. *Crafton*, 6 Me. 308; *Sibley* v. *Lombert*, 30 id. 253; *Dyer* v. *Walker*, 54 id. 18; *Baker* v. *Joseph*, 16 Cal. 173.

The several payments made took the claim out of the operation of the statute. *Barnard* v. *Bartholomew*, 22 Pick. 291;

*Taylor* v. *Frost,* 132 Mass. 30; *Walker* v. *Butler,* 6 E. & B. 506; *Nessom* v. *D'Aromd,* 13 La. 294; *Dyer* v. *Walker,* 54 Me. 18; *Sibley* v. *Lombert,* 30 id. 253.

The promise to settle, and pay the claimant, were sufficient to remove the bar of the statute. *Hazlebacker* v. *Reeves,* 12 Pa. St. 264; *Davis* v. *Steiner,* 14 id. 275; *Hart* v. *Boyd,* 54 Miss. 547; *Martin* v. *Broach,* 6 Ga. 21; *Robbins* v. *Farley,* 2 Strobh. 348; *Conway* v. *Rayburn,* 22 Ark. 290; *Lockhart* v. *Eaves,* Dudley, 321; *Buckingham* v. *Smith,* 23 Conn. 453; *Whitney* v. *Bigelow,* 4 Pick. 110; *Minkler* v. *Minkler,* 16 Vt. 193; *Lord* v. *Harvey,* 3 Conn. 370; *Barnard* v. *Bartholomew,* 22 Pick. 291; *Thompson* v. *French,* 10 Yerg. 453; *Kittredge* v. *Brown,* 9 N. H. 377; *Hale* v. *Hale,* 4 Humph. 183; *Hart* v. *Boyd,* 54 Miss. 547; *Schmidt* v. *Pfau,* 114 Ill. 494; *Ditch* v. *Vollhardt,* 82 id. 134.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On April 15, 1887, Serotia A. Alexander, the appellee, filed in the probate court of Cook county a claim against the estate of Elijah S. Alexander, the intestate of appellants.   Such proceedings were had in the probate court as that the claim was allowed to the extent of $9500.   The now appellee, not being content with the amount thus allowed her, appealed to the circuit court, where there was a jury trial, and a verdict in her favor for a very much larger sum, and, a remittitur having first been entered, a judgment for her, and against the estate, for $26,847.  On appeal to the Appellate Court for the First District that judgment was affirmed, and the object of the present appeal is to reverse such judgment of affirmance.

The claim is for $18,000, for eighteen years of services and labor of appellee in nursing and caring for Willard H. Alexander and Eunice L. Alexander, the parents of the deceased, residing at Brattleboro, Vermont, under a special contract with the deceased, and at his request, and for interest thereon. When originally filed the claim included another item, but

appellee filed a disclaimer and took a non-suit as to said last mentioned item in the trial court, and it is now eliminated from the case.

The briefs and arguments that have been filed in this court appear to be substantially those that were filed in the Appellate Court, and are largely devoted to the discussion of questions of fact, and mixed questions of law and fact. The rule that we are not permitted to review, in certain classes of cases, on appeals from or writs of error to the Appellate Courts, the decisions of those courts upon controverted questions of fact, has application to the matter of claims, based upon strictly legal causes of action, exhibited in the county and probate courts against the estates of deceased persons. (*Hobbs* v. *Ferguson's Estate,* 100 Ill. 232; *Belleville Savings Bank* v. *Bornman et al.* 124 id. 200.) In this suit, therefore, the judgment of the Appellate Court is final, both in respect to the principal or ultimate facts upon which the right of recovery is claimed or ground of defense is based, and in respect to the evidentiary and subordinate facts which are mere evidence of such principal facts. (*Hamburg-American Packet Co.* v. *Gattman,* 127 Ill. 598; *Bridge Co.* v. *Comrs. of Highways,* 101 id. 518; *Fitch* v. *Johnson,* 104 id. 118; *Edgerton* v. *Weaver,* 105 id. 43.) It follows, then, that so far as regards the principal point urged by appellants,—that the evidence is legally insufficient to support the judgment recovered,—we are precluded by the statute from examining the evidence for the purpose of determining whether or not such claim is well founded. *Exchange Nat. Bank* v. *Chicago Nat. Bank,* 131 Ill. 547.

The facts of the case, as settled in the courts below, are, that appellee was the only sister of the deceased, and a teacher of both vocal and instrumental music, and had prepared herself for such profession by about twelve years of study and practice. Prior to the breaking out of the war of the rebellion she was engaged in teaching music in a college in Virginia, and was receiving a salary of $1000 a year, besides her board,

but on the happening of that event she went to Boston, and was there employed in her profession, and deriving larger emoluments from her services, until June, 1867. Willard H. Alexander and Eunice L. Alexander, father and mother of appellee and the deceased, were somewhat aged persons, in humble circumstances, and residing at Brattleboro, Vermont. The mother had been an invalid for years, and in the winter of 1867 had a severe sickness, from which she did not readily recover, and late in the spring had a relapse. The deceased was a resident of Chicago, where for some considerable time he had been successfully engaged in business. In said June, 1867, both brother and sister were called to Brattleboro by the illness of their mother. The deceased insisted that his sister should give up teaching music, and stay at home and take care of the father and mother. She objected that it would be virtually a State's prison life for her; that she enjoyed her profession, and did not like to give it up; and that she had $1000 a year salary, and her board, when she was south, and was then doing still better. He urged that she might as well work for him as any one else; that he wanted to feel easy in his mind about his parents; that it made no difference what she could earn at her profession, and that he would pay her more than she could so earn, and that he was earning enough money and could afford to pay her. She finally yielded to his persuasions, and stayed with their father and mother upon the terms agreed upon, and remained there, faithfully performing the duties thus undertaken, until the death of her brother, the intestate, in February, 1886.

Two of the special findings of fact by the jury are as follows: "We, the jury, find that said Elijah S. Alexander made a special contract with Serotia Alexander to stay with and care for her father and mother;" and, "We find, from the evidence, that the agreement between Elijah S. Alexander and the claimant was substantially for the payment of $1000 annually, for her services in caring for her father and mother."

During the eighteen years following the making of the contract the deceased usually visited his parents once a year, though on one occasion he was absent two years or more. On one occasion, soon after the contract was made, he asked his sister how much money she wanted, and she told him that she had little use for money; that she did not go anywhere, and had no chance to spend money; that she preferred to have him keep the money in his hands, as she would have to invest it somewhere, and she felt safer to have it with him than anywhere else. He assented to the suggestion, and agreed to pay her interest. At the times of his visits he paid his sister small sums of money, varying from $20 to $100, and amounting in the aggregate to $770, and on the occasions of such payments was in the habit of saying to her, "Pass this to my credit, and it will keep our contract alive." At one time something was said about his giving her his note, but he said there was no necessity for it; that the account was just as good as long as he kept it alive, and if she gave him credit it would be just as well as it would be to have a note. The last payment he made to her was in April, 1885. Subsequently, in the summer of 1885, he was at Brattleboro, to attend the funeral of a deceased brother, and one of the special findings of the jury is, that he then promised "that he would come home that fall and pay her account for services rendered in caring for his parents." He did not return to Brattleboro in the fall, and instead thereof died in February, 1886, after a sickness of four or five months.

The defenses made in the circuit court to the claim for $18,000 and interest, were a denial of the alleged fact of the special contract for services, and a plea of the Statute of Limitations to all of the claim that accrued more than five years before the filing of the claim in the probate court.

Only a few questions of law arise upon the record. It is urged that it was error to admit in evidence the testimony of witnesses tending to prove the qualifications of appellee as a

teacher of music, and the value of her services as such. It. was not admitted for the purpose of laying a foundation for a recovery upon a *quantum meruit,* or for the recovery of any more or any less than $1000 a year, but for the purpose of answering the claim that the alleged special contract to pay appellee $1000 a year was an unreasonable one, and that it was therefore improbable that it was entered into. The admission of the evidence was not error.

It is claimed that the first instruction given for appellee was erroneous. That instruction read thus :

"If you believe, from the evidence, that Elijah A. Alexander, in his lifetime, did agree with the claimant, Serotia Alexander, that he would pay her a certain sum or sums if she would stay with and care for her parents, the court instructs you that such would be a lawful agreement ; and if she rendered such services according to agreement, she would have a right to collect therefor."

The point is made that the instruction wholly ignores the plea of the Statute of Limitations. It must be admitted that it would have been more strictly accurate if it had omitted the concluding words, "and if she rendered such services according to agreement, she would have a right to collect therefor ;" but was the instruction erroneous? We think not. It will be noted that the whole scope of the instruction was in respect to the question of the lawfulness or unlawfulness of the supposed contract. The "right to collect" was predicated merely of services rendered under a specified sort of agreement, and that upon the ground it was a *lawful* agreement. The instruction does not state a hypothetical case, and direct the jury, in the event they find that to be proven, to find for the plaintiff ; nor does it purport to embrace every element essential to a recovery. The instruction was not calculated to mislead a jury of reasonable men, and whatever there was of ambiguity in it was cured by a subsequent instruction of the court, "that the payments under the special contract would each become

due and payable annually, and that therefore the Statute of Limitations would bar the recovery of any annual installment, except such as became due and payable within five years prior to the date of filing the claim in the probate court, to-wit, April 15, 1887, and the interest upon such sums from the date or time when they became due or payable." That the jury were not in fact misled by the instruction to the detriment of appellants is made manifest by their special findings that in 1885 the deceased promised the claimant that he would that fall pay her account for services rendered in caring for his parents; that he, within five years before *said* claim was filed in the probate court, made payments *thereon,* and that the last payment was made in the summer of 1885. There was no reversible error in giving the instruction.

Appellants insist that the action of the court in refusing this instruction was erroneous:

"And the court further instructs the jury, if they believe, from the evidence, that in the year 1885 the said Elijah S. Alexander requested of the plaintiff that she should look up her account against him growing out of said alleged special contract, as well as the account of the expenses of his brother's funeral and last illness, and that he desired to make a settlement of both accounts, and that such statement preceded any offer of payment so made, and that payment was not to be made until after such account should be adjusted,—then the court instructs you that such offer would not remove the bar of the Statute of Limitations to the said plaintiff's claim, or to so much of said claim as matured more than five years prior to the filing of her said account in the probate court."

The instruction purports to be based upon this state of the evidence: Appellee kept an account book which contained memoranda showing dates and amounts, and there are many acts and expressions of the deceased in evidence tending to prove that he knew that fact, and relied upon her to keep the account between them. Charles E. Alexander testifies: "When

he (Elijah) was here at Henry's funeral, he says to Serotia, 'I shall be on again this fall, and I want you to figure up our account, which you know is very long standing, and have it all ready, as I want to settle up and pay you off.' * * * In that conversation the accounts of the expenses, the funeral expenses of my brother, and the expenses attending his last illness, were not referred to as part of the account of my sister. As my account they were referred to. He told me to have all those bills connected with my brother's sickness. He said to me to get those accounts all together in relation to Henry's expenses, and send them to him, and he would send check. He told Serotia to figure up her account, 'For you know,' he said, 'it is of long standing; I shall be on this fall; I want to settle and pay you up.' The account he was talking about that referred to me was the expenses of my brother's sickness, which he agreed to pay. He wanted I should get them all together and give him a memorandum, and he would send a check, including my own services and the money I paid out." Eunice L. Alexander, the mother, testifies: "He told her that he wanted she should figure up the account and look it over, and know how they stood, because he intended to be on again that fall and have the business settled up,—he would pay her." According to Willard H. Alexander, the father, the deceased said: "I want everything picked up pertaining to Henry's expenses during his sickness, and your own account, and have it sent to me. I want to come on here this fall and settle all up, and I don't want you to leave a thing unpicked up."

Although this court may not review the decisions of the Appellate Courts upon questions of fact in a case such as this, yet where the ruling of the trial court in refusing or giving an instruction is excepted to, we can examine the evidence for the purpose of determining whether or not the exception is well taken. (*Cothran* v. *Ellis et al.* 125 Ill. 496.) Here the refused instruction was not fairly based upon the testimony, and was

argumentative, and calculated to mislead the jury, and it unduly invaded the province of that tribunal.

The court, in another instruction, told the jury that an acknowledgment, within five years, of the debt, that would "remove the bar of the Statute of Limitations, can not be inferred from any language or expressions used by Elijah S. Alexander which are equivocal, vague or indeterminate, and which lead to no certain conclusion, but the acknowledgment and promise to pay the debt, in order to avoid the bar of the statute, must arise out of such facts as identify the debt with such certainty as will clearly determine its character, fix the amount due, and show a present unqualified willingness and intention to pay it." This stated the law with substantial accuracy, and strongly, and as favorably to appellants as they were entitled to have it given to the jury. ,

But even were it assumed that the refused instruction should have been approved by the court, yet the denial of the request to 'give it would not have been, under the circumstances of the case, such manifest error as to call for a reversal of the judgment. The evidence is uncontradicted and conclusive that within the five years payments were made by the deceased and upon the indebtedness in question, and this of itself would have taken the case out of the statute. The statement of the deceased that the account was just as good as his note as long as he kept it alive, and that if she (his sister) gave him credit it would be just as well as it would be to have a note, the fact that his payments were uniformly accompanied by some such statement as this, "Pass this to my credit, and it will keep our contract alive," and much other testimony found in the record, indicate with clearness and certainty that when he made the several payments on the contract for $1000 a year, he intended that each payment should be a partial payment upon the whole indebtedness then due, and that such payments were in fact made, partially, if not altogether, for the express purpose of keeping the indebtedness "alive," by preventing

the statute from running against it. Any other construction of the evidence would do manifest violence to the intention of the parties. It follows from this consideration, that in any event, and regardless of the question of the correctness or incorrectness of the refused instruction, its denial by the trial court worked no wrong or injury to appellants.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*