Ella R. Hopkins, Appellant, Grace C. Gilleland et al., Co-Appellants, v. Paul C. Loeber et al., Defendants. Maurice Berkson et al., Trading as Sonnenschein, Berkson, Lautmann, Levinson and Morse, Appellees.

Gen. No. 43,732.

Opinion filed October 14, 1946.   Released for publication October 28, 1946.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellant; MEYER ABRAMS, of Chicago, of counsel.

J. EDWARD JONES, of Chicago, for co-appellants.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellees.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff and intervenors appeal from an order allowing the claim of petitioners for legal services and expenditures in the amount of $4,007, together with interest to the date of the entry of the order amounting to $2,943.07, and directing the receiver of the trust involved herein to pay to petitioners the total sum of $6,950.07 from and out of the funds in his hands or to be in his hands as receiver of the trust.

In 1930 bankruptcy proceedings were pending against Leight & Company in the United States District Court for the Northern District of Illinois. A composition offer was made to creditors under the terms of which the assets of the bankrupt were to be turned over and delivered to three trustees—Paul F. Loeber, Charles E. Fox and Albert W. Swain, under a trust agreement and upon terms and conditions to be approved by the bankruptcy court.   This offer

of composition was accepted by the creditors, approved by the court, and the trust agreement executed on December 23, 1930. At that time certain claims, attorneys' fees and expenses of administration were allowed and paid out of the assets of the estate and moneys produced by certain investors, who received certificates of interest in the trust for the funds advanced by them. The plaintiff was one of the contributors to that fund and in 1941 she instituted suit against the trustees. That suit is still pending. In the course of proceedings therein a receiver was appointed for the trust, hereafter referred to as the Leight trust. May 12, 1942, petitioners, doing business as Sonnenschein, Berkson, Lautmann, Levinson & Morse, filed their petition alleging that during the years 1930 and 1931 they were retained by the trustees to render legal services in connection with the creation of the trust and its affairs; that they rendered services for which they charged the trustees the sum of $4,500, made up, as appears from the affidavit of claim made by one of the members of the firm, and exhibits attached to the petition, of statement of February 10, 1931: ''Services in connection with creation of trust—$3,500,'' and an additional statement of March 27, 1931 for services rendered from the date of the creation of the trust, or, from February 10, 1931, the date of the first bill, to March 27, 1931—$1,000. Claim is also made that petitioners expended on behalf of the trust $184.20 for records, etc.; that the trustees paid on account $677.20, leaving a balance of $4,007 due petitioners, which indebtedness the trustees have acknowledged and promised to pay as soon as funds were available. Plaintiff and intervenors, resisting this claim, filed separate answers. A hearing was had before the court, evidence was heard and the order appealed from was entered.

On the trial petitioners stated that they were not relying on a *quantum meruit* for services rendered

prior to the formation of the trust; that they were relying on ratification by the trustees afterward. This ratification was the approval of petitioners' bill at a meeting of the trustees on February 11, 1941. Plaintiff took the position that no services rendered prior to the creation of the trust (December 23, 1930) could be the basis of a valid claim against the trust assets, and consequently no subsequent ratification by the trustees could give them validity. The intervenors adopted the position of the plaintiff and also objected to the claim for services rendered after the formation of the trust, asserting among other objections that this claim was barred by the statute of limitations and by laches.

The member of the petitioning firm who performed the services rendered and appeared on the hearing in support of the claim, testified that the firm had rendered services to Loeber in 1930 in connection with the Leight bankruptcy and were paid by him for such services the sum of $500; that he, the witness, was then requested by Loeber in the late summer of 1930 to draft the trust agreement which was to be submitted with a composition offer by Leight and under the terms of which Loeber was to be a trustee; that he prepared the trust agreement and then waited until informed that the necessary orders had been entered in the bankruptcy court; that he filed no appearance and was not of record there and took no part in those proceedings until informed that it was proper for the trustees under the trust agreement to receive from the trustee in bankruptcy or the bankrupt the various assets which comprised the trust property; that the trust was created by the execution by the trustees of the trust agreement on December 23, 1930; that he could not give the dates on which the services concerning which he had testified to were rendered; that it was utterly impossible for him to determine any division of time between the services rendered by him in the matter of

the creation of the trust and other services between December 23, 1930 and February 10, 1931; that no claim was filed in the bankruptcy court for the services rendered by them in the creation of the trust; that none of the investors in the trust who put in their money and got certificates were told that there was an outstanding claim against the bankrupt for fees of $3,500 that was not scheduled in the bankruptcy court and for which no petition or claim was filed there.

After the lapse of more than 10 years after the services were rendered, petitioners seek in this proceeding to charge the assets which were turned over to the trustees under the composition agreement with an undisclosed claim for $3,500 and interest for services rendered in the creation of the trust at the request of a person not even a trustee when petitioners' services were engaged. The only authority cited in support of the claim is *Reichwald v. Commercial Hotel Co.*, 106 Ill. 439, 448, which relates to a charge against a corporation of debts created by its promoters in the organization of the corporation and in view thereof. This case has no application to the matters before us. The composition when approved by the court became a contract between the bankrupt, or debtor, and his creditors. *In re Leight & Co.*, 139 F. (2d) 313. The rights of the respective parties were fixed by that agreement. The trust agreement here involved was presented to the court and the creditors as a part of the composition offer. Its preparation was an obligation resting upon the bankrupt. In the case of *In re Fogarty*, 187 Fed. 773 (C. C. A. 7), the court said: "If they (the bankrupt and his backers) are successful in having the composition confirmed, they certainly should not be permitted to take their attorney's fees out of the composition fund which they have deposited to stand in lieu of the estate."

"A trustee has no authority until the execution of the agreement creating the trust, and his

authority thereafter is limited by the terms of the trust agreement. No provision of the trust agreement gives authority to the trustees to charge the trust assets for services rendered to or expenses incurred by any of the trustees prior to the creation of the trust. The investors in the trust and the creditors of the bankrupt became parties to the composition upon an implied if not a direct representation that the assets to be turned over to the trustees for the benefit of the trust beneficiaries were subject to no lien, claim or demand except those stated in the offer of composition, including the proposed trust agreement and the order of confirmation by the court. Petitioners are chargeable with knowledge of the law governing the situation and of the fact that their claim for services in the creation of the trust was not included in the composition but was hidden and concealed from the persons to be benefited by the trust fund. To now permit petitioners to charge the trust assets with services which were not properly chargeable against such assets when rendered, would constitute a fraud upon the beneficiaries of the trust, and, since the trustees could not bind the trust estate for services rendered prior to the execution of the trust agreement, they were equally powerless to bind the trust estate by subsequent approval for payment of a bill for such services, or by any other action that they might take.

██ The last services rendered by the petitioners were rendered on March 27, 1931. Claim for these services was filed May 12, 1942, more than 10 years after the alleged cause of action accrued. Petitioners insist that within the 10 years, to-wit: on January 4, 1933, the trustees acknowledged their indebtedness to petitioners and promised to pay same. This alleged acknowledgment is based upon a letter dated January 4, 1933 addressed to Mr. Levinson (one of the members of the petitioning firm) and signed by Paul C. Loeber, as managing trustee, stating: "Your letter of

the 31st ultimo has been received in reference to the Leight trust account. . . . If you will bear with us just a little longer you will receive a check for our account.'' This letter is defective as a toll of the statute of limitations for two reasons. Mr. Levinson's letter of the 31st ultimo was not introduced in evidence and there is nothing in the record to indicate what accounts were referred to in that letter. *Waldron v. Alexander,* 136 Ill. 550. The burden of affirmatively showing this rested on petitioners. Secondly, the letter is signed by Loeber as managing trustee. He was one of three trustees who must act in their joint capacity, and there is nothing to indicate that the remaining trustees were concurring in Loeber's letter. *Warner v. Rogers,* 255 Ill. App. 78, 83; *Maton Bros., Inc. v. Central Illinois Public Service Co.,* 356 Ill. 584, 592.

██ Petitioners having failed to establish a valid promise by the trustees to pay the indebtedness, the running of the statute was not tolled and the claim as to all of the services rendered and the money expended is barred by the statute of limitations. Chapter 83, sec. 16 [par. 17], Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 107.276]. In fixing the period in which claims are barred by laches equity follows the law and as a general rule adopts the period of limitation fixed by the statute. *Wall v. Chicago Park District,* 378 Ill. 81, 96. For this reason there can be no recovery for services rendered the trustees after the creation of the trust and expenditures made in their behalf.

The order appealed from is reversed.

*Reversed.*

O'CONNOR, P. J., and FEINBERG, J., concur.