VERONICA KAZIOVNA RAKSTIENE, Plaintiff-Appellant, *v.* JOHN KROULAIDIS *et al.*, Defendants-Appellees.

(No. 59053;

First District (2nd Division)—November 4, 1975.

*Rehearing denied December 9, 1975.*

Michael B. Susman and Robert J. Krull, both of Chicago (Mehlman, Spitzer, Addis, Ticho, Susman, Randall, Horn & Pyes, of counsel), for appellant.

No appearance for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

By her initial "Complaint in Chancery for Constructive Trust," filed on 20 February 1967, plaintiff sought to impose a constructive trust on the distributive share of $7,043.52 which each of the three defendants had received as sole heirs on final distribution of the net estate of intestate decedent Ambrose Chesokas (a.k.a. Ambrose Chasokas). That final distribution had been made pursuant to the approved final account of the administrator, John Kroulaidis, who is one of the three defendants herein because he was one of the three distributees.

On 25 May 1971, on motion of defendants, plaintiff's initial complaint was ordered stricken, with leave granted to plaintiff to file an amended complaint within six months, whereupon defendants were to answer or otherwise plead within thirty days thereafter. On 1 December 1971, plaintiff filed her first amended complaint. On 24 January 1972, defendants moved to strike that complaint on the grounds of laches and equitable estoppel owing solely to the lapse of time between the date (September of 1961) when plaintiff, by her own allegation in the amended complaint, had first learned of the facts alleged to constitute her cause of action and the date (20 February 1967) when plaintiff had filed her original complaint. On 3 January 1973, plaintiff's first amended complaint was ordered dismissed for want of equity, on grounds of "equitable laches." On 9 February 1973, plaintiff filed an amended motion to reconsider the dismissal order of 3 January 1973. After a hearing on 14 February 1973, plaintiff's amended motion to reconsider was denied. Plaintiff appeals from the denial of her amended motion to reconsider and from the order dismissing her first amended complaint, and seeks the reversal of each order and the remand of the cause to the trial court for further proceedings consistent with such reversals.

Since the only issue on this appeal is the propriety of the dismissal of plaintiff's first amended complaint, we shall, before considering plaintiff's contentions on appeal, summarize the allegations of that complaint and in that manner present the facts of the case as alleged in the complaint.

Plaintiff's first amended complaint is in three counts.

## Count I

1. On 10 December 1956, one Ambrose Chesokas (a.k.a. Ambrose Chasokas) died intestate, domiciled in Illinois. On 13 December 1956, letters of administration were applied for by, and issued to, one John Kroulaidis, a self-alleged first cousin of decedent and an Illinois domiciliary.

2. On 26 December 1956, based on the testimony of John Kroulaidis, the probate court found that Ambrose Chesokas had died, leaving him surviving as his only heirs "unknown heir or heirs at law on the paternal side * * *." No publication of notice to "unknown heirs at law" was had. On 22 January 1957, the Table of Heirship entered on 26 December 1956 was vacated, and a new Table of Heirship, based on testimony which John Kroulaidis had given on 15 January 1957, was entered finding that Ambrose Chesokas had died leaving surviving as his only heirs John Kroulaidis, Stella Narducy, and Simon Kroulaidis, his first cousins on the maternal side.

3. On 13 September 1957, John Kroulaidis filed his final account as administrator of the estate of Ambrose Chesokas, which final account was approved and the said administrator discharged. The final account showed a net distributive estate in cash of $21,130.58, which was distributed in equal thirds of $7,043.52 to the three maternal first cousins.

4. Plaintiff is a half-sister and sole surviving heir of Ambrose Chesokas and none of the persons established in the Table of Heirship of 22 January 1957 as being heirs of Ambrose Chesokas are his heirs under the applicable intestate laws of the State of Illinois.

5. Even if the three alleged heirs were in fact the maternal first cousins of Ambrose Chesokas, the Table of Heirship was erroneous in that it should have contained a finding that the decedent's heirs on the paternal side were "unknown."

6. Even if the three alleged heirs were in fact the maternal first cousins of Ambrose Chesokas, they were not entitled to their distributive shares because the applicable laws of the State of Illinois required that the net distributive estate be deposited with the Cook County Treasurer for the use and benefit of "unknown heirs at law of Ambrose Chesokas, deceased."

7. John Kroulaidis, as administrator, knew or ought to have known that the Table of Heirship was erroneous and that the distribution to the alleged maternal first cousins was contrary to law.

8. As a result of the illegal distribution, each distributee has been unjustly enriched to that extent, and defendants, despite plaintiff's request for payment, have refused payment.

9. Plaintiff first knew of the erroneous Table of Heirship and wrongful distribution through her attorneys in September of 1961 and made her demand for restitution through her attorneys in March of 1963.

10. In June, 1962, plaintiff appointed a New York law firm as her attorney-in-fact and that firm, by authorized substitution, in turn appointed a Chicago attorney as her attorney-in-fact.

WHEREFORE, plaintiff asks that the court order that the sum of $7,043.52 received by each defendant be impressed with a resulting trust and that each defendant pay the said sum to the plaintiff.

## COUNT II

Plaintiff re-alleges paragraphs 1 through 4 of Count I.

5. On 13 December 1956, in support of his application for letters of administration of the estate of Ambrose Chesokas, intestate decedent, John Kroulaidis testified that decedent's mother was named Maria and that the said Maria and defendants' father Walter were sister and brother, and that Walter was survived by three children, namely, John Kroulaidis, Stella Narducy, and Simon Kroulaidis. In fact, however, such testimony was false and John Kroulaidis knew or ought to have known that decedent's mother's maiden name was Rozalia Nanartavichute and that she was not the sister of defendants' father Walter.[1]

6. As a result of John's false testimony, repeated on 15 January 1957, a false Table of Heirship was entered and wrongful distribution resulted, so that each distributee was and remains unjustly enriched to that extent.

7. Despite plaintiff's request for repayment, defendants have refused repayment.

WHEREFORE, plaintiff asks that the court impress a constructive trust on the sum of $7,043.52 distributed to each defendant, and order each defendant to pay that amount to plaintiff.

## COUNT III

This count (based on substantially the same allegations as in Count II except that the testimony of John is here characterized as simply erroneous) is a law count for a money judgment against each defendant for $7,043.52 with interest from and after the distribution date of 13 September 1957 and with costs. The theory of the count is one of implied contract for common law restitution.

---

[1] This information as to decedent's mother's maiden name and as to the fact that she was not the sister of defendants' father Walter is information which appears in an affidavit executed by plaintiff in Moscow, U.S.S.R., on 29 June 1962 before the Consul of the United States of America who acknowledged the said execution. The affidavit, attached to plaintiff's original complaint as Exhibit C and incorporated therein, is part of the record in this case.

The grounds alleged by defendants as the basis for their motion to strike plaintiff's first amended complaint were that the complaint failed to state a cause of action recognized in equity; that the cause of action was barred by laches and equitable estoppel because the face of the complaint shows that plaintiff first knew of the alleged false Table of Heirship and the wrongful distribution pursuant thereto in September of 1961, and yet did not file the instant action until February, 1967; and that, in a contested matter, plaintiff cannot establish heirship by her own testimony.

As hereinbefore stated, the order of 3 January 1973 dismissing the first amended complaint for want of equity assigned "equitable laches" as grounds for the dismissal.

Plaintiff's amended motion (filed on 9 February 1973) to reconsider the dismissal order alleged that: (1) proof by defendants of a prejudicial change of position caused by plaintiff's delay is necessary for a finding that plaintiff's action is barred by laches, and no such proof was alleged or offered; and (2) fraud is properly pleaded in the amended complaint and the doctrine of laches should not be used to protect fraud.

As hereinbefore stated, plaintiff's amended motion to reconsider was denied after a hearing on 14 February 1973, and plaintiff appeals from the dismissal order of 3 January 1973 and from the denial of her motion to reconsider.

OPINION

Plaintiff raises as her only contention on appeal the same two contentions which constituted the grounds for her amended motion to reconsider. The record in this case does not contain transcripts of the hearing had on the occasion of the entry of the order of 3 January 1973 or on the occasion of the denial on 14 February 1973 of plaintiff's amended motion to reconsider. Hence, our sole information as to that order and as to the denial of that motion derives from the pleadings and from the orders themselves.

Analyzing plaintiff's first amended complaint, we note that the equitable remedy of a resulting trust, sought in Count I of plaintiff's first amended complaint, is unavailable on the facts alleged. Plaintiff simply misconceives the nature of a resulting trust. "A resulting trust arises where the legal estate is disposed of or acquired, not fraudulently or in violation of fiduciary duty, but where the intent appears or is inferred from the terms of the disposition, or accompanying facts, that the beneficial interest is not to go with the legal title." (35 Ill. L. & Pr. *Trusts* § 41 (1958).) Count II seeks the equitable remedy of the imposition of a constructive trust for unjust enrichment upon the distributed share of

decedent's net estate which each defendant received as the result of the alleged false heirship testimony of John Kroulaidis. In effect, Count II seeks equitable restitution through the device of the constructive trust. Count III seeks legal restitution by way of implied contract.

In their motion to strike and dismiss, defendants raised the issue of laches, since the period of delay was apparent on the face of the complaint. But the motion relied solely on that disclosed period of delay. Under the facts alleged in the complaint, both the equitable and the legal restitutional cause of action accrued to plaintiff on 13 September 1957, the date of the final distribution. We note here that the limitation period applicable to Count III (the legal action in implied contract) is five years from the accrual of the cause of action. (Ill. Rev. Stat. 1965, ch. 83, par. 16.) If, however, the complaint be read as alleging a fraudulent concealment of the cause of action (despite the absence of any express allegation to that effect), then the limitation period applicable to Count III is five years from the time plaintiff first learned of the existence of the cause of action (Ill. Rev. Stat. 1965, ch. 83, par. 23); here that was alleged to be in September of 1961. The original complaint was filed on 20 February 1967.

Plaintiff's motion to reconsider the order of dismissal alleged that proof by defendants of a change of position or of some other prejudice to themselves was necessary to support a claim of laches, and that defendants had made no such allegation or proof. This is plaintiff's first contention on appeal.

■■ Where a claim is equitable owing to the equitable nature of the remedy sought, but there is also a legal remedy available for the same claim, equity first looks to the limitation period which the legislature has established for the legal remedy. And where the period of delay exceeds that limitation period, equity follows the law by adopting that limitation period as the period constituting laches as well. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 96, 37 N.E.2d 752; *Hopkins v. Loeber* (1946), 329 Ill.App. 423, 69 N.E.2d 104.) And in such cases, the normal rule that laches requires both unexplained delay and a resulting prejudice to the adverse party is not applicable; the mere delay constitutes laches. As this court said in *Messick v. Mohr* (1937), 292 Ill.App. 69, 74-75, 10 N.E.2d 870, 873:

> "*Mere delay* in asserting a right does not ordinarily bar the enforcement of the right in equity on the ground of laches, *unless the statutory period allowed for asserting this right has elapsed.*" (Emphasis added.)

The normal rule, therefore, upon which plaintiff relies, is applicable only

where the period of delay is less than the limitation period established for the legal remedy which is available for the same claim.

■■ In the instant case, even reading plaintiff's first amended complaint as alleging fraudulent concealment of the cause of action, so that section 22 of "An Act in regard to limitations" (Ill. Rev. Stat. 1965, ch. 83, par. 23) is applicable to the legal remedy, the limitation period is five years from the time plaintiff learned of the cause of action. On plaintiff's own allegation in her amended complaint, that was in September of 1961. The action was filed on 20 February 1967, which is five years and five months thereafter. Hence, the dismissal of the complaint on the ground of laches was not error, even though defendants did not allege or prove any prejudice to, or change of position by, themselves as a result of the delay. We emphasize, however, that a showing of prejudice or change of position remains necessary if the period of delay relied upon to constitute laches is less than the limitation period applicable to the legal remedy which is available for the same claim, and also in any instance in which there is no legal remedy available for the same claim.

■■ Plaintiff's second contention on appeal is that the doctrine of laches is not applicable to a cause of action which, as here, is based on fraud. But the cases cited by plaintiff in support of this proposition (*Messick v. Mohr* (1937), 292 Ill.App. 69, 10 N.E.2d 870; *Schultz v. O'Hearn* (1925), 319 Ill. 244, 149 N.E. 808) are distinguishable because in those cases the period of delay relied upon to constitute laches was less than the statutory limitation period applicable to the legal remedy available for the same claim. In addition, the applicable limitation period here is specifically provided for cases of fraudulent concealment, and the prohibition against bringing the action after the expiration of the five-year limitation period is express ("and not afterwards"). Ill. Rev. Stat. 1965, ch. 83, par. 23.

We think that the essential interrelationship between laches and the statute of limitations in cases in which, as here, the period of delay exceeds the limitation period applicable to the legal remedy available for the same claim, is such that the motion of defendants raising the issue of laches must be construed as also raising the issue of limitation as to Count III. In any event, it would be futile to sustain, as we do, the dismissal of Count II and then to remand the cause for further proceedings at law on Count III, in which proceedings defendants could then simply plead the limitation period either by way of a motion to dismiss or by way of answer.

We conclude that it cannot be said that the trial court abused its

discretion in dismissing plaintiff's complaint on the ground of laches. See *Holt v. Duncan* (1962), 33 Ill.App.2d 477, 180 N.E.2d 36.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.