546 F.2d 1059
 41 A.L.R.Fed. 331, 77-1 USTC P 16,241
 Virginia Dare NEELY, Executrix of the Estate of Charles A.
Neely, Deceased, on his behalf and on behalf of
all members of a class similarly
situated, Appellant,
v.
UNITED STATES of America.
 No. 76-1113.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1976.
Decided Dec. 15, 1976.
 
 Harold Gondelman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for appellant.
 Blair A. Griffith, U. S. Atty., Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., Richard L. Thornburgh, Asst. Atty. Gen., George W. Calhoun, Larry L. Gregg, Attys., Dept. of Justice, Washington, D. C., for appellee.
 Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 In 1968, the United States Supreme Court found that prosecution for failure to comply with the federal wagering tax statutes, 26 U.S.C. §§ 4401-23, encroached upon the Fifth Amendment's protection against compulsory self-incrimination. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). The rule was subsequently accorded full retroactivity in United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). And in United States v. Sams, 521 F.2d 421 (3d Cir. 1975), this court held that a district court could properly annul a wagering tax conviction even when that judgment was entered on a plea of guilty.
 
 
 2
 The present appeal arises from a dismissal of a class action complaint filed on behalf of individuals convicted and fined under the wagering tax statutes and asking for annulment of all class members' convictions as well as a return of the fines, penalties, and costs paid by class members at the time of their convictions. The major questions presented are of first impression in this court, and require us to determine whether a district court has the authority under the Tucker Act, 28 U.S.C. § 1346, to order the return of fines and costs paid under unconstitutional convictions, and whether a class action may properly lie to annul the convictions of class members and to recover the fines and costs paid by them. We answer both questions in the affirmative.
 
 I.
 
 3
 Charles A. Neely[1] pleaded guilty to violations of the federal wagering tax statutes in 1962 and again in 1966. He paid fines of $2050 and $2000, respectively, pursuant to those convictions. On December 12, 1973 Neely filed a complaint in federal district court "on behalf of himself and on behalf of all members of a class similarly situated." Neely properly averred that he was a class representative as defined by Rules 23(a) and 23(b)(3), F.R.Civ.P., defined the purported class, and made other necessary class action averments. The essential requested relief was twofold: (1) a request to strike the judgments of conviction and sentences entered under the wagering tax statutes; and (2) a claim for the return of all fines, penalties, and costs paid incident to the convictions.
 
 
 4
 In compliance with Rule 8(a), F.R.Civ.P., the complaint contained a statement of grounds for the court's jurisdiction: it incorporated by reference the jurisdictional bases of similar and successful individual actions filed in other district courts, as well as decisions by the United States Courts of Appeals for the Second and Fifth Circuits affirming these district court decisions.[2] The complaint averred that the district court in the present action had jurisdiction of the subject matter "by virtue of the cases hereinabove referred to."[3]
 
 
 5
 On the same day that he filed the class action, Neely filed petitions at the two criminal numbered proceedings in which he had originally entered guilty pleas. These petitions, at Numbers 62-146 and 66-329 Criminal, asked for individual relief identical to that sought on behalf of the class in the class action. On March 7, 1974, District Judge Hubert I. Teitlebaum granted Neely's motion to consolidate these two proceedings at criminal numbers with the class action, but five days later Judge Teitlebaum vacated the consolidation order and noted that the proceedings at Numbers 66-146 and 66-329 were assigned to Judge Louis Rosenberg and Judge John L. Miller, respectively. By subsequent order of April 8, 1974, the class action was reassigned by Judge Teitlebaum to the Clerk of the Court, "since disposition at this time is impossible." The case was later reassigned to Judge Barron P. McCune.
 
 
 6
 Neely subsequently prevailed on his petition at Criminal No. 66-329 and the government's appeal in this court was dismissed on its motion. Neely's petition at Criminal No. 62-146 remains undecided. On June 17, 1974, shortly following a hearing by Judge McCune on government motions to dismiss and to stay discovery, 15 individuals petitioned to intervene in Neely's class action. On April 2, 1975, Neely filed a second petition to transfer and consolidate the remaining undecided petition at Criminal No. 62-146 with the class action, and on September 8, 1975, Neely moved for immediate certification of a class.
 
 
 7
 Final action in the within proceedings in the trial court took place on December 17, 1975 when the district court found and concluded that Neely as an individual asserted no Tucker Act claim in his class action complaint; that Neely could not represent the purported class because of this defect; that Neely could not consolidate his petition at Criminal No. 62-146 with the class action to assert a Tucker Act claim on his own behalf and cure the defect; that, because the class action complaint was invalid, the original filing did not toll the statute of limitations for the class; that the intervenors could not save the class action because the statute of limitations had run against them; and that, even assuming the above conclusions to be invalid, certification of the class would be denied on the basis of unmanageability. Based on these conclusions, the district court denied the motion to intervene, denied Neely's motion for certification of a class, and granted the government's motion to dismiss. Neely timely appealed.
 
 II.
 
 8
 In United States v. Sams, supra, we reserved the question whether the Tucker Act provides authority for a district court to order the return of fines and costs based upon unconstitutional convictions. This case presents the question again and, under the circumstances here presented, we have no difficulty in concluding that the Tucker Act, specifically 28 U.S.C. § 1346(a)(2), does provide such authority. We are persuaded that our conclusion is supported not only by the plain language of the statute itself, but also by relevant Supreme Court precedent and by the similar conclusions of other courts of appeals.
 
 
 9
 There are two possibly pertinent provisions of the Tucker Act. The first is § 1346(a)(1), which provides for original district court jurisdiction, concurrent with the Court of Claims, of
 
 
 10
 (a)ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.
 
 
 11
 The second is § 1346(a)(2), which provides, in pertinent part, for original district court jurisdiction, concurrent with the Court of Claims, of
 
 
 12
 (a)ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .
 
 
 13
 Both provisions arguably might be considered applicable to the factual complex before us. We are convinced, however, that this case does present a claim "founded upon the Constitution" within the meaning of § 1346(a)(2) and, accordingly, we perceive no utility in considering whether § 1346(a)(1) might also provide statutory authority for the claim. The claim upheld in Marchetti and Grosso was that the methods employed by Congress in the wagering tax statutes were inconsistent with the Fifth Amendment privilege against self-incrimination. That certainly was a claim founded upon the Constitution. Neely's claim is substantively identical. It is more confidently asserted, of course, because Marchetti and Grosso brightly and authoritatively establish the merit of the claim; and it arises in a different procedural context because Marchetti and Grosso were criminal prosecutions where the Fifth Amendment claim was raised as a defense; but we believe that in each instance the gravamen of the claim is the same and that it is a claim founded upon the Constitution. Neely's claim, distilled to its essence, is that his conviction and fine were obtained in a manner violative of the Constitution and that he is entitled to remedy. That, we believe, is a claim founded upon the Constitution within the meaning of § 1346(a)(2).
 
 
 14
 Our conclusion is buttressed by the Supreme Court's expansive approach to identical Tucker Act language in the recent Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Those cases involved 28 U.S.C. § 1491, a Tucker Act provision which confers jurisdiction on the Court of Claims, not the district courts, but which contains language identical to the language of § 1346(a)(2) except that the $10,000 jurisdictional maximum imposed on the district courts is not imposed on the Court of Claims.[4] The essential claim made in those cases was that there had been a taking of property for public use without just compensation. In considering whether a Tucker Act remedy was available, the Court asked first whether the case fell "within the literal words of 'any claim against the United States founded . . . upon the Constitution . . ..' " 419 U.S. at 126, 95 S.Ct. at 350. Believing that the case plainly did fall within the literal words, the Court said that the next inquiry to be made was whether Congress had withdrawn the Tucker Act grant of jurisdiction and, despite some formidable testimony to the contrary in Congress, see ibid. at 172, 95 S.Ct. 335. (Douglas, J., dissenting), the Court concluded that there had been no legislative intention to withdraw the Tucker Act jurisdictional grant. This expansive reading of the statute is consistent with Justice Holmes' admonition that the Tucker Act is not to be "construed strictly and read with an adverse eye." United States v. Emery, 237 U.S. 28, 32, 35 S.Ct. 499, 500, 59 L.Ed. 825 (1915).
 
 
 15
 Our conclusion that the Tucker Act is available to Neely in this case is reinforced by application of the Rail Cases analysis. This being a claim "within the literal words" of the statute, the only inquiry is whether there is persuasive evidence of congressional intent to withdraw the Tucker Act remedy for persons unconstitutionally convicted and fined under the wagering tax statutes. To our knowledge, there is none. In the Rail Cases, there was an arguable question, at least, of legislative intent; in this case, there is no evidence of legislative concern on the matter one way or the other. Under these circumstances, our conclusion would seem to follow a fortiori from the Rail Cases. The statute, by its terms, confers the authority in question and Congress, not having considered the matter, cannot reasonably be deemed to have withdrawn it.
 
 
 16
 Other courts of appeals which have considered the question of an order of repayment of wagering tax fines[5] have all concluded that there is authority for such an order, albeit by interestingly diverse rationales. The First Circuit has allowed recovery of a wagering tax fine under § 1346(a)(1), noting, however, that the fine "might" also be recoverable under § 1346(a) (2). DeCecco v. United States, 485 F.2d 372 (1st Cir. 1973). The Seventh Circuit has allowed recovery under § 1346(a)(2). Pasha v. United States, 484 F.2d 630 (7th Cir. 1972). The Second Circuit has affirmed a district court decision which predicated recovery on § 1346(a)(1) "and/or" § 1346(a)(2). United States v. Summa, 362 F.Supp. 1177 (D.Conn.1972), aff'd., No. 73-1153 (2d Cir., August 14, 1973). And the Fifth Circuit, apparently not doubtful that authority to order repayment is conferred by § 1346(a), has emphasized that no separate Tucker Act action is required: "Since the district court was empowered to set aside the conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines. This it could do without requiring the bringing of another action." United States v. Lewis, 478 F.2d 835 (5th Cir. 1973).
 
 
 17
 Although some courts have imported into this question issues of constitutional dimension, we see no necessity to do so. As a matter of statutory law, we believe that 28 U.S.C. § 1346(a)(2) provides authority for a district court to order the return of wagering tax fines and costs. Accordingly, this case may proceed on that basis.[6]
 
 III.
 
 18
 Before reviewing the district court's several conclusions concerning the invalidity of Neely's class action, we consider it necessary to evaluate the government's contention that Neely's class action must fail ab initio because civil procedures are not available to remedy criminal convictions and their consequences. The government characterizes Neely's complaint as seeking a "writ of error coram nobis" and states that this writ survives only as a criminal remedy, having been abolished by Rule 60(b) F.R.Civ.P.[7] for civil cases. "As a criminal remedy," the argument continues, "the civil rules are, by definition, inapplicable, and this includes the class action procedures." Government's Brief at 7-8. We do not find this kind of tautological reasoning helpful. We find neither authority for, nor substance in, the argument, and, accordingly, we reject it in toto.
 
 
 19
 The brute fact is that civil procedures are available to remedy criminal convictions and their consequences, especially where, as here, constitutional deprivations are involved. A federal prisoner may move to vacate, set aside or correct his sentence under 28 U.S.C. § 2255; a state prisoner may obtain similar relief by a petition for habeas corpus. "(A) motion under § 2255, like a petition for a writ of habeas corpus (Riddle v. Dyche,262 U.S. 333, 336 (43 S.Ct. 555, 556, 67 L.Ed. 1009)), is not a proceeding in the original criminal prosecution but an independent civil suit." Heflin v. United States, 358 U.S. 415, 418 n.7, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); C. Wright, 2 Federal Practice and Procedure § 590 (1969). Alternatively, the facts might justify a Bivens-type action, see District of Columbia v. Carter,409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); Paton v. La Prade, 524 F.2d 862 (3d Cir. 1975), or a claim under 28 U.S.C. § 1361.[8] These too are civil proceedings.
 
 
 20
 The question here is not one of common law pleading. Whether we ought to characterize this action as seeking a writ of error coram nobis or, more properly, as a petition in the nature of a writ of error coram nobis, Neely plainly and directly styled his complaint as a "class action to vacate, annul and set aside judgments and sentences of conviction and to order repayment of fines, penalties and costs." The question here is whether such an action can be brought under Rule 23, F.R.Civ.P. The answer depends not on common law terminology but on an evaluation whether, for class action purposes, this action may fairly and properly be characterized as civil in nature.
 
 
 21
 In abolishing coram nobis, as well as several other ancient procedural devices, Rule 60(b) did not, and indeed could not, "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The very sentence which abolishes coram nobis provides for relief from a judgment by motion or by an independent action. The prior sentence of the rule provides that "(t)his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . " Clearly, the rule provides a choice between motion or independent action, at the initiating party's option. Neely, in addition to moving at Criminal Nos. 62-146 and 66-329, brought an independent action seeking relief from a judgment. That the judgment in question was criminal by no means establishes that the independent action for relief from it must also be characterized as criminal. This action bears no resemblance to a criminal proceeding. The government is the defendant, not the initiating party; the rights asserted are private, not public. An examination of the Federal Rules of Criminal Procedure reveals how irrelevant they are to this action. We find this case most analogous to a proceeding under 28 U.S.C. § 2255 which, though it may seek relief from a prior criminal judgment, is authoritatively recognized as civil in nature.
 
 
 22
 The government's reliance on United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed.2d 248 (1954), is misplaced. Morgan had pleaded guilty on a federal charge and served his sentence. Thereafter, he was convicted on a state charge and sentenced to a greater term because of the prior federal conviction. He sought to void the federal judgment of conviction on the constitutional ground that he had not been furnished counsel. The district court styled his proceeding as a motion under 28 U.S.C. § 2255 and denied relief because he was no longer in custody as required by § 2255. The Court of Appeals reversed and the Supreme Court affirmed the reversal, stating:
 
 
 23
 The foregoing summary of steps discloses respondent's uncertainty in respect to choice of remedy. The papers are labeled as though they sought a common law writ of error coram nobis but the notice of the motion indicates that an order voiding the judgment is sought. In behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief. We think a belated effort to set aside the conviction and sentence in the federal criminal case is shown. We therefore treat the record as adequately presenting a motion in the nature of a writ of error coram nobis enabling the trial court to properly exercise its jurisdiction.
 
 
 24
 346 U.S. at 505, 74 S.Ct. at 249.
 
 
 25
 The argument apparently was made in Morgan that relief had to be sought by way of a separate proceeding but the Court responded, in a footnote upon which the government relies, that a motion in the nature of a writ of error coram nobis "is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding." Ibid. at 505 n.4, 74 S.Ct. at 249. We do not understand this language to preclude resort to a separate civil proceeding but rather, taken in context, we believe that it parallels Rule 60(b) in indicating, in the specific context of relief from a criminal judgment, a possible choice on the part of a person seeking such relief to proceed either by motion in the original criminal action or by initiating a separate civil action, e. g., habeas corpus, § 2255, etc. Neely's counsel, of course, chose to do both and, given the procedural uncertainties presented by his client's case, that choice seems prudent even in retrospect. We read Morgan as an extension, not a contraction, of the district court's authority to review judgments. We read it to permit review of a criminal judgment later than the time restraints of Rule 60(b) and indeed later than the custody requirement of 28 U.S.C. § 2255, but we do not read it as authority for the proposition that all actions seeking relief from criminal judgments must be characterized as criminal. On the contrary, our view of the nature of Neely's action is buttressed by the statement, contained in the same footnote of Morgan, that a motion for a writ of error coram nobis "is of the same general character as one under 28 U.S.C. § 2255." Ibid.
 
 
 26
 Whatever we may choose to call this somewhat unusual proceeding, we are convinced that its essential characteristics, for present purposes, are civil. To accept the government's argument here would be to resurrect in 1976 the orismology of wooden common law pleading and to do violence to the pith and sap of the procedural rules governing the federal courts. This we refuse to do. Provided that the requisites of Rule 23 are in all respects satisfied, we see nothing in the case inherently incompatible with the class action vehicle.
 
 IV.
 
 27
 We turn now to the district court's conclusions that Neely asserted no Tucker Act claim in his class action complaint, that he could not represent the class because of this defect, and that he could not consolidate his criminal petition with the class action in order to assert a Tucker Act claim and cure the defect.
 
 
 28
 We find ourselves in basic disagreement with the district court's conclusions. Our disagreement arises, initially, from a difficulty in understanding the factual predicate of the district court's conclusions. The district court said: "(W)e have no substantive rights of Neely here. In other words, Neely has filed no Tucker Act claim (28 U.S.C. § 1346(a)(1)) at this number or any civil claim on any other theory. Put another way, he is not a member of the alleged class in this action." But the plain historical fact is that the complaint was captioned "Charles A. Neely, on behalf of himself and on behalf of all members of a class similarly situated." The complaint contained jurisdictional allegations, including specific reference to the Tucker Act and to previous cases that allowed recovery of wagering tax fines, and it expressly requested that the court "direct the defendant, United States of America to make restitution to each and every member of the class of the fines, penalties and costs paid." Additionally, the complaint defined the class as consisting of "all individuals who have been convicted and paid fines, penalties and costs for violations of and failure to comply with the provisions relating to taxes on wagering or filing returns required thereby; as well as violations of the criminal provisions of the wagering tax statutes or for conspiracy under 18 U.S.C. § 371 to violate the provisions of the statute relating to the taxes and returns on wagering." Neely was a member of that class.
 
 
 29
 Apparently, part of the district court's reasoning was that Neely's substantive rights had been asserted at Criminal Nos. 62-146 and 66-329 and, therefore, could not simultaneously be asserted in the class action. Particularly as no issue of double recovery was presented indeed, Neely himself moved twice to consolidate the proceedings we see no necessity for or propriety in such an approach to pleading, seemingly hearkening back to the ancient common law doctrine of election of remedies and wholly inconsistent with the spirit of the Federal Rules "to secure the just, speedy, and inexpensive determination of every action." Rule 1, F.R.Civ.P. In our view, the complaint asserts a Tucker Act claim[9] on behalf of a class of which Neely is a member; his individual rights were asserted, and continue to be asserted at least with respect to the conviction at Criminal No. 62-146 which is not yet adjudicated.
 
 
 30
 The district court concluded that, even though it could transfer Criminal No. 62-146, it could not consolidate that petition with the class action: "(W)e are unaware that petitions for writs of coram nobis at criminal numbers may be consolidated with a civil action even though the petitions at the criminal numbers might also be construed to be Tucker Act claims. No authority has been cited for such proposition." Where a recognized procedural device has the potential to conserve judicial resources while expediting resolution of claims on the merits, we think that the more appropriate inquiry is whether there is any persuasive reason against its use. There was no impediment to the district court's being hospitable to the complaint filed in this action and, a fortiori, there was no impediment to its granting the petition for consolidation of Criminal No. 62-146 with the case sub judice. To the extent that the district court ruled otherwise, it committed error.
 
 V.
 A.
 
 31
 In United States v. Sams, supra, it was not necessary for us to decide whether the six year limitations period applicable to actions against the United States, 28 U.S.C. § 2401(a),[10] commenced running when the fine was imposed or when Marchetti and Grosso were decided. Because Neely's fines were imposed in 1962 and 1966, and his claim for relief was not filed until December 12, 1973 eleven years after his first fine and seven years after his second this appeal requires us to decide the question reserved in Sams.
 
 
 32
 As we observed in Sams, federal courts have sometimes postponed the running of the limitations period in actions against the United States where the claimant did not know, and in the exercise of reasonable diligence could not learn, that a claim had accrued. The benefit of such a postponement may be obtained if the claim was "inherently unknowable" at accrual. 430 F.2d at 429. Although we expressed some concern in Sams whether a claim like Sams', or Neely's, was inherently unknowable when the fine was originally imposed, ibid. n.47, we have now had the opportunity of further reflection and the advantage of additional briefing and argument and we find our previous concerns wholly dissipated.
 
 
 33
 The government contends that the statute of limitations commenced to run at the time of payment of the fines and that the exception for inherently unknowable claims did not suspend its running. The government's argument is that there was notice prior to Marchetti and Grosso, in lower court cases and in the Supreme Court's decision in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), that wagering tax convictions could be successfully challenged on Fifth Amendment grounds. However persuasive this contention might be elsewhere, it simply does not wash in this court. It requires a litigant to possess constitutional prescience that this court itself does not possess. The Grosso case originated in the United States District Court for the Western District of Pennsylvania. Grosso's contention was first rejected by that court, then it was rejected by our court, United States v. Grosso, 358 F.2d 154 (3d Cir. 1966). We relied on United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), authoritative precedents, at the time, which were later expressly overruled by the Supreme Court in Marchetti. 390 U.S. at 54, 88 S.Ct. 697. To require clairvoyance in predicting new jurisprudential furrows plowed by the Supreme Court, under these circumstances, would be to impose an unconscionable prerequisite to asserting a timely claim.
 
 
 34
 Accordingly, we hold that rights accruing under Marchetti and Grosso were inherently unknowable prior to January 29, 1968, when those cases were decided. The statute of limitations on such claims was, therefore, suspended and did not begin to run until that date. United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353, 1358 (5th Cir. 1972).
 
 B.
 
 35
 The district court's initial conclusion that Neely's class action complaint was invalid led it to the secondary conclusion that the statute of limitations had continued to run against class members and would bar any claims filed after January 29, 1974. Accordingly, when the petition to intervene was filed on June 17, 1974, the district court denied it on the ground that the claims were time-barred. In view of our ruling on the class action complaint, we are directing the district court to reconsider its denial of intervention. Should the district court decide that class certification is still inappropriate, see § VI infra, we ask it then to consider the possible application of American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) to the question of the timeliness of the intervenors' claims.
 
 VI.
 
 36
 Since the threshold legal questions in this appeal were matters of first impression in this circuit, dictates of fairness and justice prompt us to direct the trial court to consider anew the extremely important question of class certification and, particularly, the issue of manageability. Manageability, as we have said before, "is a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals." Link v. Mercedes-Benz, 550 F.2d 860, 864 (3d Cir. 1976). In this instance, however, certain legal factors have insinuated themselves into the problem and, because we take a different view of these than the trial court, we believe it is appropriate to give the trial court the opportunity to re-evaluate its position under the altered circumstances.
 
 
 37
 In evaluating the issue of manageability, the district court was apparently distressed by the government's argument that the Federal Set-Off Statute, 31 U.S.C. § 227,[11] might apply to these proceedings. The government asserts in its brief that "the varying amounts of set-offs the Comptroller General would be required to assert would make class relief inappropriate." To the extent that this argument is predicated on the burden that a class action might create on the Comptroller General's office, we wholly reject it. Conceding that it might be tedious for the office to process a large number of claims entered as a result of a class action, we fail to see how this is relevant to class certification. The processing would be as tedious, perhaps more so, if each judgment were entered as the result of an individual action. Of course, the unstated premise of such an argument is that, if required to be individually asserted, most repayment claims would not be asserted at all. This probably is true but, in our view, militates for rather than against a class action under the circumstances of this particular case.11a
 
 
 38
 To the extent that the government's set-off argument is predicated on the possible interjection into the case of individual issues by virtue of varying amounts and kinds of set-offs, it is more plausible but in our view not controlling at this time. The set-off statute comes into play only after a final judgment has been recovered and presented for payment, but if claims are asserted in this regard prior to final judgment, and if, in addition, they are contested, the issues presented may be adjudicated in the district court under the jurisdiction conferred by 28 U.S.C. § 1346(c).[12] At that time, the diverse issues that such claims might present would be extremely relevant to a question of class manageability, and we believe that the district court was properly concerned with that problem. But we perceive a distinction between a present awareness of the potential for a future problem, and a present determination on the basis that the potential problem has already ripened into an actuality. While it is appropriate for the district court in its present concern for manageability to consider the possibility that claims of the government may create problems in futuro, this must be with an awareness that their essential relevance comes later in the proceedings, if and when they are asserted. We have previously indicated that the district court has wide discretion in the context of class determinations and that Rule 23(c)(1) "itself provides that the ruling on the propriety of a class action may be amended by the court before a final decision on the merits." Interpace Corporation v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971). We are confident that, upon remand, the district court will consider all the ramifications of this problem, cognizant of its broad authority to control the class action device with maximum accommodations to the various competing interests. See Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).
 
 
 39
 On the question of manageability the district court also expressed concern over the possible application of 26 U.S.C. § 7422(a),[13] which requires that a refund claim be filed before a proceeding may be maintained to recover an internal revenue tax or penalty. Presumably, if this provision applied it would bar the action itself as opposed merely to class certification prior to the filing of a refund claim or claims. We are not aware that this contention has been successfully asserted in any court. See cases cited at 1064, supra. The fact is that this action seeks to annul convictions and to recover fines imposed by courts, not the Secretary. Although it has a tangential relationship to the tax laws, it is, in essence, a constitutional claim and, as such, we believe that it is wholly outside the scope of § 7422(a). The government has given no indication that the Secretary would be hospitable to repayment claims if filed under § 7422(a) and, clearly, he would have no authority to annul convictions. Under these circumstances, we believe that filing under § 7422(a) would be both unnecessary and futile and that the district court's concerns in this regard were not well founded.
 
 
 40
 In making its determination of whether the action meets stated criteria for class certification, the district court must not be unmindful of the unique factual complex in which this case arises. The statute of limitations has now run on future individual filings under the Tucker Act; if a class certification is denied in these proceedings, only the named plaintiff and possibly some intervenors will have the benefit of the relief requested. In this regard, Mr. Justice Black's aphorism may be pertinent: "Rule 23(b), like the other civil rules, was written to further, not defeat the ends of justice." Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966).
 
 
 41
 Once a court is convinced that a plaintiff's claims are of substantial merit, and that the class action device is the most practicable method of vindication, it must not allow encountered procedural difficulties to obviate its responsibility to adjudicate those claims. As the Supreme Court declared in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946): "(W) here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." And this court has recognized not only that the class action technique "makes possible an effective assertion of many claims which otherwise would not be enforced," but also that the 1966 amendments to Rule 23, F.R.Civ.P., constitute "a restatement and reinforcement of public policy . . . which candidly facilitate and encourage the use of class actions." Greenfield v. Villager Industries, Inc., 483 F.2d 824, 831 (3d Cir. 1973). See also Kramer v. Scientific Control Corp., 534 F.2d 1085, 1091 (3d Cir.), cert. denied, --- U.S. ----, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976).
 
 
 42
 We suggest that the district court, in evaluating the question of unmanageability, consider certain information which surfaced during oral argument before this court. We are not satisfied that the parties below adequately explored the extent of relevant data now available in the Administrative Office of the United States Courts, see, e. g., Criminal Proceedings Commenced in the U.S. District Courts, By Nature of Offense, Table D-2, Annual Report of the Director of the Administrative Office of the U.S. Courts, Gambling and Lottery 1955-1968, or the information that has been or may have been collated, or even computerized, by the executive or legislative branches of government.[14] Before a ruling is made denying class action certification on unmanageability grounds, hard data should be presented to the district court as to the actual difficulty or ease involved in determining class membership and managing this proceeding.
 
 
 43
 We emphasize that we are not ordering the certification of a class. We are directing that the issue of certification be considered anew.
 
 
 44
 The judgment of the district court denying class certification, denying intervention, and dismissing the complaint will be in all respects reversed and the cause remanded for further proceedings in accordance with the foregoing.
 
 
 
 [1]
 Mr. Neely died in 1975 and his wife and executrix, Virginia Dare Neely, was substituted as the named plaintiff. For simplicity, we will refer to the plaintiff as "Neely" at all stages of the proceeding
 
 
 [2]
 United States v. Summa, No. 73-1153 (2d Cir., August 14, 1973), affirming, 362 F.Supp. 1177 (D.C.Conn.1972); United States v. Lewis, 478 F.2d 835 (5th Cir. 1973), affirming, 342 F.Supp. 833 (E.D.La.1972)
 
 
 [3]
 However inartfully the jurisdictional allegation was composed, we are mindful of 28 U.S.C. § 1653: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."
 
 
 [4]
 Neely's claim is within the jurisdictional limitation. The petition to intervene indicates that the intervenors' claims, individually, are also within the limitation. On remand, the district court may wish to consider whether an aggregation problem is presented by the class action procedure
 
 
 [5]
 Other circuits apparently have not addressed the ancillary question of repayment of costs but we think that any jurisdiction which would support an order to repay fines would equally support an order with respect to other sums, however denominated, that were actually paid and directly attributable to the illegal conviction
 
 
 [6]
 The government has not asserted the prior criminal proceedings as res judicata of the present action. We express no view as to whether the doctrine should apply to post-conviction proceedings under the Tucker Act, see Preiser v. Rodriquez, 411 U.S. 475, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), but note that even if it is applicable, the merits of the present case may be entertained under F.R.Civ.P. 60(b)(6). The Supreme Court's decision in United States v. United States Coin and Currency that Marchetti and Grosso have retroactive effect justifies relief from the operation of the judgment. Compare Polites v. United States, 364 U.S. 426, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960)
 
 
 [7]
 "(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action
 
 
 [8]
 Congress has provided that "(t)he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361
 
 
 [9]
 The Tucker Act "does not prescribe any particular pleading." Pasha v. United States, supra, 484 F.2d at 632. "This statute is one which confers a jurisdiction upon the district courts. It is not procedural." United States v. Lewis, supra, 478 F.2d at 836
 
 
 [10]
 " § 2401. Time for commencing action against United States
 (a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."
 
 
 [11]
 " § 227. Offsets against judgments against United States
 When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; and if such plaintiff assents to such set-off, and discharges his judgment or an amount thereof equal to said debt, the Comptroller General of the United States shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff."
 Mar. 3, 1875, c. 149, 18 Stat. 481; Mar. 3, 1933, c. 212, Title II, § 13, 47 Stat. 1516.
 11a Neely's fines, as we have indicated, totalled $4,050. The petition to intervene indicates that the intervenors' fines, generally, were in excess of $1,000. Although we cannot predict the size of other individual claims, this is not a situation where trivial amounts are claimed on behalf of vast numbers of people. The fines and costs assessed in each case cannot be said to be de minimus or trivial.
 
 
 [12]
 28 U.S.C. § 1346(c) provides:
 The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.
 
 
 [13]
 " § 7422. Civil actions for refund
 (a) No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."
 
 
 [14]
 See, e. g., studies by the President's National Crime Commission and the Law Enforcement Assistance Agency, referred to in the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. No. 90-351, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News, pp. 2112, 2123