(Nos. 88763, 88764 cons

SUNDANCE HOMES, INC., *et al.*, Appellants, v. THE COUNTY OF DU PAGE *et al.*, Appellees.

*Opinion filed February 16, 2001.—Rehearing denied April 2, 2001.*

GARMAN, J., took no part.

FREEMAN, J., joined by McMORROW, J., specially concurring.

Joseph M. Laraia, of Laraia & Hubbard, P.C., of Wheaton, and Vincent L. DiTommaso, of DiTommaso & Associates, of Oak Brook, for appellant Sundance Homes, Inc.

Theodore A. Shapero, Bruce C. Nelson and Harold W. Francke, of Piper, Marbury, Rudnick & Wolfe, of Chicago, for appellants Fifield Cos. *et al.*

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Anna B. Harkins, Assistant State's Attorneys, of counsel), for appellees.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

On March 23, 1995, this court rendered its opinion in *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25 (1995) (hereinafter referred to as *NIHBA*), holding unconstitutional the first of two state enabling statutes, and Du Page County ordinances enacted pursuant thereto, which, respectively, authorized and imposed transportation impact fees on new development. In the context of that case, this court stated, "monies collected thereunder should be returned." *NIHBA*, 165 Ill. 2d at 35-36, 50. The appellants in this case, fee payers who were not parties in *NIHBA*, who waited more than five years after they had paid the impact fees in question to file for a refund, and who indeed filed almost a full year *after NIHBA* was decided, now seek, by various procedural means legal and equitable, a refund of fees they paid under the invalidated statute and ordinances. Although there are several facets to the issue, their right to a refund is the central question before the court. We set forth hereafter facts necessary to an understanding of our disposition.

In 1987, the Illinois legislature enacted former section 5—608(a) of the Illinois Highway Code (the enabling act) (Ill. Rev. Stat. 1987, ch. 121, par. 5—608(a), repealed by Pub. Act 86—97, § 2, eff. July 26, 1989). The 1987 enabling act allowed counties with populations between 400,000 and 1 million inhabitants to establish transportation impact districts and collect transportation impact fees from persons constructing new developments in those districts.

Pursuant to the enabling act, Du Page County passed several ordinances creating transportation impact districts and providing for the collection of road impact fees from builders (Du Page County Ordinances ODT—016—88, ODT—021—89, ODT—21A—89, ODT—021B—89). The plaintiff, Sundance Homes, Inc. (Sundance), is a

development company which constructs new residences in Du Page County. Between November 22, 1988, and July 25, 1990, the county collected road impact fees from the plaintiff and other homebuilders. On July 26, 1989, the legislature repealed the enabling act and passed the Road Improvement Impact Fee Law (605 ILCS 5/5—901 *et seq.* (West 1992)). As a result of that legislation, the county enacted a new ordinance effective July 25, 1990, authorizing the collection of road impact fees pursuant to the new law. The instant case concerns only those impact fees collected by the county prior to July 25, 1990.

Between January 17, 1989, and July 25, 1990, plaintiff paid a total of $63,580 in road impact fees to the county. The plaintiff submitted each payment under protest. In 1988, the plaintiff and several other home-builders filed a lawsuit against the county in the circuit court of Du Page County. Home Builders Ass'n of Greater Chicago v. County of Du Page, No. 88—MR—683 (Circuit Court of Du Page County). In that case, the plaintiff requested a declaration that the enabling act and the Du Page County ordinances enacted pursuant thereto were unconstitutional. The plaintiff also sought the entry of an order requiring the county to refund all road impact fees paid by the plaintiff and the other named home-builders. Although the plaintiff moved for judgment on the pleadings in that case on June 15, 1990, no judgment was ever entered on the merits and the case was voluntarily dismissed in November 1990.

The constitutionality of the enabling act of 1987, and the Du Page County implementing ordinances, was again attacked in a separate lawsuit brought by different home-builders in *NIHBA*. As previously noted, on March 23, 1995, this court filed an opinion in *NIHBA*, holding unconstitutional the enabling act of 1987, and the Du Page County implementing ordinances, and stating that "the monies collected thereunder should be returned."

*NIHBA*, 165 Ill. 2d at 35-36, 50. The appellants in the instant case were not parties in *NIHBA*.

Following this court's holding in *NIHBA*, the plaintiff requested that the county return the $63,580 in road impact fees it had paid between January 17, 1989, and July 25, 1990. The county refused the plaintiff's request for a refund.

Plaintiff filed the instant class action suit on February 8, 1996, requesting that the county be ordered to return all of the road impact fees paid between November 22, 1998, and July 25, 1990. The plaintiff alleged that, during this period, the county had collected an aggregate amount of $6,194,056.22 in impact fees from the members of the class. As subsequently amended, the plaintiff's complaint consisted of three counts. Count I was entitled "mandamus" and sought an order requiring the county to immediately return the impact fees paid by each class member. Count II was entitled "declaratory judgment" and sought an order declaring that the county was indebted to each class member in an amount equal to the total road impact fees paid by that class member. Count III was entitled "restitution, assumpsit, unjust enrichment, and recovery of payment" and sought an order that the county be required to deposit all of the collected road impact fees into a common fund for the benefit of the members of the class.

On July 10, 1996, the county filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 1996)). In its motion, the county argued that plaintiff's complaint was time-barred by section 13—205 of the Code, which imposes a five-year limitation period on "all civil actions not otherwise provided for." 735 ILCS 5/13—205 (West 1996). The county argued that the plaintiff had failed to file its complaint within five years from the date its cause of action accrued, according to the county, the date it had actually paid the road impact fees. Alternatively, the

county argued that the plaintiff's complaint should be barred under the doctrine of *laches*.

In response to the motion, the plaintiff argued that its cause of action did not accrue until this court filed its opinion in *NIHBA* on March 23, 1995. The plaintiff contended that, prior to the ruling in *NIHBA*, it had no right to a refund of the impact fees. The plaintiff therefore concluded that the instant class action was a timely attempt to "enforce" this court's ruling in *NIHBA* that the monies collected pursuant to the invalidated ordinances "be returned." On November 5, 1996, the trial court denied the county's motion to dismiss.

On March 4, 1997, the circuit court entered an order certifying as a class "[a]ll persons or entities who paid impact fees to the [County] and/or claim a refund pursuant to *** Ordinance Nos. [ODT]—016—88; ODT—021—89; ODT—021A—89; and ODT—021B—89 during the period of the effective enforcement of said ordinance[s] which was from November 22, 1988, through July 25, 1990, which ordinance[s] w[ere] declared to be unconstitutional by the Illinois Supreme Court." The trial court also identified as a subclass those homebuyers who were entitled to a refund because their developer/builder had incorporated the charge for the road impact fees into the purchase price of their homes.

On September 22, 1997, the plaintiff filed a motion for summary judgment as to each count of its complaint. The plaintiff argued that there existed no genuine issue as to the county's obligation to return the road impact fees and as to the amount of the refund due. The plaintiff therefore concluded that it was entitled to judgment as a matter of law. On November 24, 1997, the trial court entered an order granting the motion for summary judgment. The county filed a notice of appeal from that order, but the appellate court dismissed the appeal. Sundance Homes, Inc. v. County of Du Page, No. 2—97—1232 (February 6, 1998) (unpublished order of dismissal).

On March 13, 1998, the circuit court entered an order creating a common fund for the benefit of the class and directing the Du Page County treasurer to transfer $6,194,056.22 into the fund. Also in March of 1998, the court-approved "Notice of Class Action and Hearing on Attorneys' Fees" was sent to all ascertainable members of the class by first class mail and was published in certain newspapers. Accompanying the notice was a copy of the plaintiff's petition for attorney fees. The notice advised the class members that they could either register their claims for a refund out of the common fund or "opt-out" of the class. By the end of the registration period, class members representing claims totaling $68,000 had chosen to "opt-out" of the class. Class and subclass members representing claims totaling $2,406,745 registered to participate in the distribution of the common fund. Of those claims, there were several dual registrations by homebuilders and home buyers claiming a refund to the same $37,800 in impact fees.

On September 3, 1998, the circuit court entered various orders providing that (1) the county had no standing to be heard on the plaintiff's petition for attorney fees; (2) attorney fees would be calculated based upon the entire common fund and not just the claimed portion of the fund; (3) attorney fees would be paid from the unclaimed portion of the fund; (4) an additional $37,800 would be paid out of the unclaimed fund in order to satisfy all of the dual claims; and (5) the class would receive prejudgment interest at a rate of 5% from the date the action was filed.

On June 8, 1998, Fifield Companies, Inc., Cambridge Homes, Inc., Cambridge Properties, Lexington Homes, L.L.C., Prentiss Properties Acquisition Partners, L.P., Kingsport Development, Inc., Strategic Realty Advisors, Inc., Catellus Development Corporation, Plitt Theatres, Inc., and Toys "R" Us, Inc. (collectively referred to as the intervenors), filed motions pursuant to section

2—804(a) of the Code (735 ILCS 5/2—804(a) (West 1998)) to intervene in the class action in order to challenge the class certification and the plaintiff's petition for attorney fees. Each of these entities had paid road impact fees under the invalidated ordinances and were members of the class. Although the circuit court did not rule on the motions to intervene, the movants did participate in all aspects of the lawsuit after June 8, 1998.

On November 4, 1998, the circuit court conducted a hearing on the plaintiff's petition for attorney fees. At the hearing, plaintiff's counsel presented a detailed summary of the legal services performed on behalf of the class and the expenses incurred in prosecuting the case. Plaintiff's counsel also provided the testimony of two expert witnesses who had experience in class action litigation. Both witnesses outlined the benefits and results achieved for the class and concluded that an award of attorney fees in an amount equal to one-third of the common fund would be appropriate.

On January 15, 1999, the circuit court entered an order awarding 21.289% of the common fund as attorney fees. The common fund, including prejudgment interest, totaled $7,045,720. Applying the trial court's percentage award to the common fund resulted in a fee award of $1.5 million.

Also on January 15, 1999, the trial court entered a final dispositional order, providing that (1) $2,737,672 (claims of $2,406,745 plus prejudgment interest of $330,927) be paid out of the common fund to satisfy all of the registered claims of the class; (2) $1.5 million be paid out of the remaining unclaimed portion of the common fund to satisfy the award of attorney fees; (3) $68,000 of the unclaimed portion of the common fund be returned to the county to satisfy the potential claims of class members who had "opted-out"; (4) $37,800 be paid out of the unclaimed portion of the common fund to

satisfy all of the dual claims made by homebuilders and homeowners; (5) the remainder of the unclaimed portion of the fund be returned to the county's general fund subject to the county's reduction of its next real estate tax levy on all county taxpayers by that amount; and (6) enforcement of the order would be stayed pending an appeal.

At the time the trial court entered its final dispositional order, the intervenors renewed their request for a ruling on their still-pending motions to intervene. The intervenors sought a ruling on their motions for the express purpose of protecting their rights and interests in any appeal from the circuit court's judgment. Over the objection of the attorney representing the class, the circuit court granted the motions to intervene. The county did not object to the intervenors' motions.

Following entry of the circuit court's final dispositional order, the county filed a timely notice of appeal.

The appellate court reversed, rejecting plaintiff's assertion that the instant litigation merely represents an attempt to "enforce" this court's judgment in *NIHBA*, and holding both that the statute of limitation set forth in section 13—205 of the Code barred this action and that the doctrine of *laches* would have barred the action in any event. No. 2—99—0125 (unpublished order under Rule 23).

We subsequently allowed timely filed petitions for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), and now affirm the judgment of the appellate court. We begin our analysis with observations on the nature of time limitations applicable to legal and equitable actions by way of statutes of limitation and the equitable doctrine of *laches*, respectively, focusing specifically on refund litigation.

The purpose of a statute of limitation is to discourage the presentation of stale claims and to encourage dili-

gence in the bringing of actions. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 137 (1975). Statutes of limitation and repose represent society's recognition that predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice (*Sepmeyer v. Holman*, 162 Ill. 2d 249, 256 (1994)) that must be balanced against the right of every citizen to seek redress for a legally recognized wrong. In achieving this accommodation of interests, it is first necessary to determine when a given cause of action "accrues," so as to commence the running of the relevant statutory period.

Courts of this state have held that a statute of limitation begins to run when the party to be barred has the right to invoke the aid of the court to enforce his remedy. *Milnes v. Hunt*, 311 Ill. App. 3d 977, 980 (2000); *Rohter v. Passarella*, 246 Ill. App. 3d 860, 869 (1993). Stated another way, a limitation period begins "when facts exist which authorize one party to maintain an action against another." *Davis v. Munie*, 235 Ill. 620, 622 (1908); *Bank of Ravenswood v. City of Chicago*, 307 Ill. App. 3d 161, 167 (1999). It has been accurately noted that a limitation period will not await commencement until a plaintiff has *assurance* of the success of an action. *Weger v. Shell Oil Co.*, 966 F.2d 216, 219 (7th Cir. 1992) citing *Nendza v. Board of Review of the Department of Labor*, 105 Ill. App. 3d 437, 442 (1982) (discovery rule not applicable where a plaintiff waits to file suit or a claim until he has some assurance he will be successful on the merits of his claim).

Although an impact fee is not a tax (see *NIHBA*, 165 Ill. 2d at 42), the similarities between payment of a tax, and payment of an impact fee, are sufficient to render instructive tax cases addressing the issue of accrual. One such example in the federal system is the United States Supreme Court's decision in *United States v. Dalm*, 494 U.S. 596, 108 L. Ed. 2d 548, 110 S. Ct. 1361 (1990). In

*Dalm*, the Supreme Court held that a federal limitation period, applicable to tax refund claims for overpayment, began to run when a taxpayer tendered payment of a tax to the government, not when the taxpayer discovered that the payment was erroneous. In so holding, the Court noted:

"The very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious. That a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar." *Dalm*, 494 U.S. at 609 n.7, 108 L. Ed. 2d at 562 n.7, 110 S. Ct. at 1369 n.7.

Limitation provisions in our state revenue statutes indicate that the time period for a claim runs from either the time a return is filed or the time the tax is paid. Section 911(a)(1) of the Illinois Income Tax Act (35 ILCS 5/911(a)(1) (West 1998)), for example, provides as follows:

"A claim for refund shall be filed not later than 3 years after the date the return was filed (in the case of returns required under Article 7 of this Act respecting any amounts withheld as tax, not later than 3 years after the 15th day of the 4th month following the close of the calendar year in which such withholding was made), or one year after the date the tax was paid, whichever is the later[.]"

As section 911(a)(1) indicates, and as other tax limitation statutes discussed hereafter will show, our legislature intended, subject to established equitable "principles" of tolling, such as the appropriate application of the discovery rule, that the right to request a refund commence and terminate on dates certain. The date of accrual is generally the date that the tax is paid.

Consistent with the need for certainty and finality, it is a principle of long standing in this state that once a statute of limitation has expired, a defendant has a right

to invoke the bar of the limitation period as a defense to a cause of action. *M.E.H. v. L.H.*, 177 Ill. 2d 207, 214-15 (1997). As this court recently stated in *Clay v. Kuhl*, 189 Ill. 2d 603, 609 (2000), "under Illinois law, the barring of an action by a statute of limitation creates a \*\*\* right in favor of the defendant, and the action cannot later be revived." If, as this court stated in *Clay*, subsequent *legislative action* cannot revive a cause of action already barred by a rule of limitation, it would seem to follow that subsequent *court decisions* cannot revive a civil cause of action not timely filed, at least in those instances where a plaintiff was fully aware of the basis for his claim, or should have been, he did not suffer from a legal disability, and the facts do not demonstrate other recognized grounds for equitable tolling.

Federal decisions appear to sanction strict application of statutes of limitation in the area of tax litigation, even where the law has been altered by judicial decision. "[L]egal principles, even when applied retroactively, do not apply to cases already closed." *Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042 (5th Cir. 1997), citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758, 131 L. Ed. 2d 820, 830, 115 S. Ct. 1745, 1751 (1995). The Supreme Court in *Hyde* considered "tax examples" that presented "different, remedial problems." Considering one such example, the Court stated:

> "Suppose a State collects taxes under a taxing statute that this Court later holds unconstitutional. Taxpayers then sue for a refund of the unconstitutionally collected taxes. Retroactive application of the Court's holding would seem to entitle the taxpayers to a refund of taxes. But what if a pre-existing, separate, independent rule of state law, having nothing to do with retroactivity—a rule containing certain procedural requirements for any refund suit— nonetheless barred the taxpayers' refund suit? [Citations.] Depending upon whether or not this independent rule satisfied other provisions of the Constitution, it could inde-

pendently bar the taxpayers' refund claim." *Hyde,* 514 U.S. at 756, 131 L. Ed. 2d at 828-29, 115 S. Ct. at 1750.

In *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 535, 541-42, 544, 115 L. Ed. 2d 481, 488, 492-93, 111 S. Ct. 2439, 2443, 2446-48 (1991), a tax refund case, Justice Souter, announcing the judgment of the Court, made clear that court decisions cannot be applied retroactively to civil causes already barred by statutes of limitation or *res judicata.* The Supreme Court has repeatedly affirmed the notion that a statute of limitation may bar a tax refund action, notwithstanding the Court's ruling that the state's taxing statute is unconstitutional, and irrespective of the Court's retroactive application of that ruling. See *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation,* 496 U.S. 18, 27, 45, 110 L. Ed. 2d 17, 29, 41, 110 S. Ct. 2238, 2245, 2254-55 (1990) (acknowledging that statutes of limitation may be dispositive in such cases); *Ward v. Board of County Commissioners,* 253 U.S. 17, 25, 64 L. Ed. 751, 759, 40 S. Ct. 419, 422 (1920) (recognizing refund claim could be barred if there was "any valid local [limitations] law in force when the claim was filed"). See also *United States v. Estate of Donnelly,* 397 U.S. 286, 296, 25 L. Ed. 2d 312, 319-20, 90 S. Ct. 1033, 1039 (1970) (Harlan, J., concurring, noting that, at some point a "transaction has acquired such a degree of finality that the rights of the parties should be considered frozen. \*\*\* [I]n the civil area that moment should be when the transaction is beyond challenge either because the statute of limitations has run or the rights of the parties have been fixed by litigation and have become *res judicata*").

It would make no sense for the Court to consistently reaffirm this principle if the cause of action for a refund did not begin to run until the Court held a state taxing statute unconstitutional. A statute of limitation would not be implicated. Clearly, the action accrues when the tax is paid.

Undoubtedly, statutes of limitation are valid procedural restrictions which may be invoked to bar an otherwise meritorious claim for a refund, even when that claim is based upon a tax statute that has been held unconstitutional. We turn now from our discussion of statutes of limitation to address the related equitable doctrine of *laches*.

This court has defined "*laches*" as "a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." *Meyers v. Kissner*, 149 Ill. 2d 1, 12 (1992). For *laches* to apply, a plaintiff must have knowledge of his right, yet fail to assert it in a timely manner. *Bremer v. Bremer*, 411 Ill. 454, 468 (1952). Although statutes of limitation, applicable in legal actions, are not directly controlling in suits seeking equitable relief, courts ordinarily follow statutes of limitation as convenient measures for determining the length of time that ought to operate as a bar to an equitable cause of action. *Meyers*, 149 Ill. 2d at 12. However, depending upon the particular circumstances before the court, equitable relief may be refused although the time fixed by the statute of limitations has not expired, or conversely, relief may be granted even though the limitation period has long since elapsed. *Meyers*, 149 Ill. 2d at 12.

Thus, for better or worse, depending upon one's view of the importance and continuing relevance of the law-equity dichotomy, how we categorize various actions tends to control the limitation schemes applied to them: generally, statutes of limitation apply to actions at law; *laches* is the doctrine of limitation applied to actions in equity. Obviously, the shrewd advocate, faced with a limitation problem, will attempt to manipulate the outcome by casting his action as one in equity in order to take advantage of the amorphous quality of *laches* analysis.

However, *laches* analysis is no longer mechanically applied to all actions denominated equitable, particularly where such an application would frustrate the intent of the legislature. For example, although a constructive trust is considered to be an *equitable* remedy imposed by a court to prevent "unjust enrichment" (*In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447 (1989)), this court has held the five-year statute of limitation of section 13—205 applicable to an action for constructive trusts. *Hagney v. Lopeman*, 147 Ill. 2d 458, 462 (1992); *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 560-61 (1980). The same five-year statute of limitation has been applied to an action seeking restitution of taxes erroneously paid, based upon the same theory of "unjust enrichment," an action "at law" (*Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 527-28 (7th Cir. 1998), citing, *inter alia*, *Partipilo v. Hallman*, 156 Ill. App. 3d 806 (1987)) governed by "principles of equity" (*Burns*, 135 F.3d at 528, citing *Board of Highway Commissioners v. City of Bloomington*, 253 Ill. 164, 174 (1911)). In so holding, the *Burns* court commented on the "decreasingly important (and therefore increasingly hazy) line between law and equity." *Burns*, 135 F.3d at 528.

While we need not comment on the propriety of that observation, we *do* note the inclination of courts to circumscribe the reach of equity in revenue cases and the apparent intent of our legislature to impose shorter limitation periods, and thus greater certainty, in the area of tax refund litigation. The federal government, like Illinois, imposes detailed statutes of limitation on tax refund claims. Section 6511(a) of the Internal Revenue Code of 1986 requires an aggrieved taxpayer to file any claim for refund within three years from the time the tax return was filed or two years from the time the tax was paid, whichever period expires later. 26 U.S.C. § 6511(a)

(1994). We have previously referred to the application of that statute in our discussion of *Dalm*. We note that the same statute of limitation was at issue in *United States v. Brockamp*, 519 U.S. 347, 136 L. Ed. 2d 818, 117 S. Ct. 849 (1997), wherein the taxpayers seeking a refund argued that the statute was subject to equitable tolling for nonstatutory equitable reasons. The Supreme Court concluded that Congress did not intend the equitable tolling doctrine to apply beyond the provisions of the statute. Writing for a unanimous Court, Justice Breyer stated:

"Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

The nature of the underlying subject matter—tax collection—underscores the linguistic point. *** To read an 'equitable tolling' exception into § 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification. [Citation.] The nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system. At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires." *Brockamp*, 519 U.S. at 352-53, 136 L. Ed. 2d at 823-24, 117 S. Ct. at 852.

Like section 1611(a) of the Internal Revenue Code, our own state statutes of limitation, applicable to claims for tax refunds or credits, generally apply a maximum three-year limitation to such claims. See 35 ILCS 5/911(a)(1) (West 1998) (Illinois Income Tax Act); 35 ILCS 105/21 (West 1998) (Use Tax Act); 35 ILCS 115/19 (West 1998) (Service Occupation Tax Act); 35 ILCS 120/6

(West 1998) (Retailers' Occupation Tax Act); 35 ILCS 610/6 (West 1998) (Messages Tax Act); 35 ILCS 615/6 (West 1998) (Gas Revenue Tax Act); 35 ILCS 620/6 (West 1998) (Public Utilities Revenue Act); 35 ILCS 630/10 (West 1998) (Telecommunications Excise Tax Act). These statutes contain few, if any, exceptions to their terms.

The original 1987 enabling act for the collection of impact fees contained no provisions specifically addressing refund claims or procedures for challenging the collection of impact fees. However, effective July 26, 1989, the legislature enacted the Road Improvement Impact Fee Law and, with it, a very limited provision pertaining specifically to the refund of unencumbered impact fees and a separate "appeals process" apparently intended to cover every other conceivable challenge to the collection of impact fees. Ill. Rev. Stat. 1989, ch. 121, pars. 5—916, 5—917. The former provision (now 605 ILCS 5/5—916 (West 1998)) provided as follows:

> "All impact fees collected by a unit of local government shall be refunded to the person who paid the fee or to that person's successor in interest whenever the unit of local government fails to encumber by contract impact fees collected within 5 years of the date on which such impact fees were due to be paid." Ill. Rev. Stat. 1989, ch. 121, par. 5—916.

The statute requires that the person claiming a refund file "a petition with the unit of local government imposing the impact fee, seeking a refund within one year from the date that such fees were required to be encumbered by contract." Ill. Rev. Stat. 1989, ch. 121, par. 5—916.

Section 5—916 pertains only to refunds based upon the local governmental entity's failure to encumber the fees by contract within the five-year period. All other claims would appear to fall under the umbrella of section 5—917, which contains no limitation provision of its own. Ill. Rev. Stat. 1989, ch. 121, par. 5—917. Neither section was in effect when the impact fees at issue in this case

were collected; however, section 5—918 of the Road Improvement Impact Fee Law, a transition clause, *does* purport to affect funds previously collected, stating, "Nothing in this Section shall require the refund of impact fees previously collected *** provided that such impact fees are encumbered as provided in Section 5—916." 605 ILCS 5/5—918(c) (West 1998). Section 5—918 places the onus on counties to use or lose fees collected and earmarked for road improvement under the prior enabling act and implementing ordinances.

With these observations and authorities in mind, we turn now to the specific issues raised by the appellants (plaintiff and intervenors) in this case, beginning with the appellants' suggestion that they are entitled to "enforce" this court's judgment in *NIHBA*.

A judgment has been traditionally defined as "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights *of the parties* in the lawsuit." (Emphasis added.) *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 119 (1978), citing 49 C.J.S. *Judgments* § 5 (1947). Generally speaking, persons not parties are not affected by a judgment (50 C.J.S. *Judgments* § 538 (1997)), they are not bound by it (*Richards v. Jefferson County, Alabama,* 517 U.S. 793, 798, 135 L. Ed. 2d 76, 83, 116 S. Ct. 1761, 1765-66 (1996)), and they may not enforce it (50 C.J.S. *Judgments* § 693 (1997)).

As the county points out, the Code of Civil Procedure provides the means by which additional parties may be joined in a pending action (735 ILCS 5/2—404 (West 1998)), those interested in the outcome may intervene (735 ILCS 5/2—408 (West 1998)), and a single party may represent a class of litigants (735 ILCS 5/2—801 *et seq.* (West 1998)). Plaintiff and intervenors are obviously aware of those procedures: they have employed them. Plaintiff was evidently aware that a basis existed for

challenging the constitutionality of the statute and ordinances at issue: it did so in 1988, subsequently dismissing its action voluntarily. Although appellants take issue with the appellate court's consideration of that case as a matter not of record here, we note that a court of review may take judicial notice of prior litigation. See *In re Estate of Gebis*, 186 Ill. 2d 188, 196 (1999). The point is the plaintiff and intervenors could have joined in the *NIHBA* case; they did not. Notwithstanding their inaction, they might still have tasted the fruit of the *NIHBA* ruling first-hand had they timely filed within the statute of limitation applicable to them. *James B. Beam Distilling Co.*, 501 U.S. at 542, 115 L. Ed. 2d at 492-93, 111 S. Ct. at 2447. They did not.

This court's statement in *NIHBA* regarding the return of monies collected under the statute and ordinances evinced our view of the proper disposition of funds as between the parties then before the court, the parties over whom this court had jurisdiction. We did not state, nor did we intend to imply, that our judgment requires the County of Du Page to refund impact fees paid by nonparties.

Next, the appellants argue that their action was timely filed because their right to a refund accrued, and a refund became "recoverably certain" only upon this court's decision in *NIHBA*. Appellants, variously, support their contention that a court decision can "create" a cause of action with citations to *People v. Meyerowitz*, 61 Ill. 2d 200 (1975), *Kelly v. Chicago Park District*, 409 Ill. 91, 98 (1951), *People ex rel. Foreman v. Village of Round Lake*, 171 Ill. App. 3d 443, 456 (1988), *Neely v. United States*, 546 F.2d 1059, 1068 (3d Cir. 1976), and *United States v. One 1961 Chevrolet Impala Sedan*, 457 F.2d 1353, 1358 (5th Cir. 1972). Although we believe the authorities we have heretofore cited are sufficient to demonstrate the fallacy of appellants' reasoning, we will

briefly address appellants' authorities which merit comment.

Appellants argue that *Kelly* supports their position insofar as the *Kelly* court held that a statute of limitation did not begin to run upon employees' salary claims, and indeed the cause of action on same did not even accrue, until the employees established their rights of employment through a separate *mandamus* action. Assuming, without addressing, the continued vitality of the holding in *Kelly*, we do not believe it applies to the facts and circumstances of the present case. It is obviously not only permissible, but desirable, to bring related claims at once in a single action. Plaintiffs in *NIHBA* joined constitutional challenges and refund claims in *their* successful lawsuit. On the basis of the authorities we have previously discussed, we reject without further comment the contention that *Kelly* controls in the context of fee or tax refund litigation.

Although we are always open to consideration of cases from other jurisdictions in order that we might glean wisdom found therein, and while federal court decisions interpreting a federal act are actually *binding* upon our Illinois courts (*Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996); *Hilst v. General Motors Corp.*, 305 Ill. App. 3d 792, 795 (1999)), we are *not* bound by those decisions insofar as their applicability is argued on issues relating solely to *state* law. *Hanrahan v. Williams*, 174 Ill. 2d 268, 277 (1996).

With respect to the federal circuit court cases upon which appellants rely, we acknowledge that they do indeed *purport to* address accrual of an action; however, the significance that appellants accord their analysis in *this* context is misplaced. The decisions relate to the effect of subsequent changes in the decisional law on prior *criminal convictions* and ancillary fines, penalties and costs paid pursuant thereto, not collected taxes or fees

and claims for refunds; they deal with *federal*, not state, statutes; and, although they couch their analyses in terms of "accrual" of an action, in substance they invoke "discovery" principles and involve retroactive application of the United States Supreme Court's decisions in *Marchetti v. United States*, 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697 (1968), and *Grosso v. United States*, 390 U.S. 62, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968), which were accorded "full" retroactivity in *United States v. United States Coin & Currency*, 401 U.S. 715, 724, 28 L. Ed. 2d 434, 441, 91 S. Ct. 1041, 1046 (1971), to causes which had *already* accrued. It seems to us these circuit court cases unnecessarily pervert and distort concepts of accrual in order to bring their facts squarely within the realm of retroactive application.

If the cause of action had *not* already accrued, it would seem there would have been no need for the *Neely* court to state that the statute of limitation was "suspended" until the date of the *Marchetti* and *Grosso* decisions. *Neely*, 546 F.2d at 1068. Moreover, a closer reading of these cases reveals that the courts were in fact applying a discovery rule (appropriately or not) to already accrued causes, as evinced by the *Neely* court's statement that "federal courts have sometimes *postponed* the running of the limitations period in actions against the United States where the claimant did not know, and in the exercise of reasonable diligence could not learn, that a cause of action *had* accrued." (Emphasis added.) *Neely*, 546 F.2d at 1068.

By application of the *Neely* and *Chevrolet Impala* analyses, a cause of action would not accrue on a constitutional claim until the first challenge succeeded, an event which could conceivably take place decades after final judgment was entered. This absurd analysis, which defies accepted notions of finality, is patently contrary to the reasoning of numerous federal decisions

previously cited and is inconsistent with principles expressed in our own statutory schemes. It seems clear to us that accrual was really not the issue; the federal decisions upon which appellants rely were apparently grounded upon a hybrid analysis merging elements of the discovery rule and retroactive application of *Marchetti* and *Grosso*. Whatever the federal circuit courts' views may have been on those issues, we are not, as we have stated, bound by them. We address here *state* questions in the context of a *civil* case.

In *Meyerowitz*, also cited by appellants, this court considered an issue similar to those presented in the federal cases appellants have cited. Like *Neely* and *Chevrolet Impala*, *Meyerowitz* was a criminal case; unlike those cases, this court unequivocally founded its decision on principles of retroactive application. In *Meyerowitz*, with Justices Underwood and Ryan dissenting, this court accorded its decision in *People v. McCabe*, 49 Ill. 2d 338 (1971) "complete retroactive application," discussing and relying on the decisions in *Marchetti*, *Grosso*, and *United States Coin & Currency*. *Meyerowitz*, 61 Ill. 2d at 208-11. Based on the application of *McCabe*, this court held that "money, having been received in payment of fines imposed as an incident to judgments of conviction, should be ordered refunded as an incident to the vacation of the judgments under which it was ordered paid." *Meyerowitz*, 61 Ill. 2d at 213-14. Nothing was said in *Meyerowitz* regarding the time that the defendants' actions accrued. The State did not contend that the defendants' actions were untimely; indeed, it acquiesced in the retroactive application of *McCabe* to terminate the probation of defendant Meyerowitz and to vacate the judgments of conviction of all the defendants, arguing only that *McCabe* should not be given retroactive effect to the extent of requiring refunds of fines paid as punishment for pre-*McCabe* marijuana convictions. The State essentially

conceded that the actions could properly be brought by various procedural means. *Meyerowitz*, 61 Ill. 2d at 204-05. We also emphasize that the decision of this court in *Meyerowitz* was grounded upon the United States Supreme Court's decision in *United States Coin & Currency*, wherein Justice Harlan, writing for the majority, differentiated between forfeitures and fines paid pursuant to *criminal convictions* and the collection of taxes in a *civil* action. *United States Coin & Currency*, 401 U.S. at 718, 28 L. Ed. 2d at 437, 91 S. Ct. at 1043.

It is within our inherent power, as the highest court of this state, to give a decision prospective or retroactive application. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 328 (1989). Analysis of that question in civil cases is governed by the test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971). *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 88 (1997). Different considerations apply in criminal cases. See *People v. Dean*, 175 Ill. 2d 244, 252-53 (1997). We are concerned here, however, strictly with civil application, and certainly in that context we may "declin[e] to give [a] previous opinion retroactive effect, at least with respect to the parties *** before the *** court." *Aleckson*, 176 Ill. 2d at 86.

In *this* case, our analysis does not even reach that point because the statute of limitation applies and has elapsed. The sound reasoning of the United States Supreme Court in *James B. Beam Distilling Co.* expresses our view in this refund matter. As Justice Souter stated in *James B. Beam Distilling Co.*, without objection from his colleagues, "retroactivity in civil cases must be limited by the need for finality [citation]; once suit is barred by *res judicata* or by statutes of limitation or repose, a new rule cannot reopen the door already closed." *James B. Beam Distilling Co.*, 501 U.S. at 541, 115 L. Ed. 2d at 492, 111 S. Ct. at 2446. The door is closed in this instance.

Section 13—205 of the Code of Civil Procedure sets forth a catchall statute of limitation for "all civil actions not otherwise provided for." 735 ILCS 5/13—205 (West 1998). This court has previously acknowledged the applicability of section 13—205 to tax refund cases in which the claimants challenged a municipal sales tax, stating that aggrieved "taxpayers cannot recover disputed taxes if their suit is barred by the statute of limitations." *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 407 (1989). Section 13—205 was actually applied to an action seeking refund of impact fees in *Raintree Homes, Inc. v. Village of Kildeer*, 302 Ill. App. 3d 304, 307-08 (1999). Appellants acknowledge the holding of *Raintree*, but point out that there was no indication in that case whether the refund claim sounded in law or equity and no argument or discussion as to which time-bar principle should apply. We could make the same observation with respect to *Ross v. City of Geneva*, 71 Ill. 2d 27 (1978), upon which appellants rely.

In *Ross*, the plaintiff class prosecuted a refund action seeking the return of fees collected, pursuant to ordinance, over a 13-year period. The fees in *Ross* were initially *hidden* and not shown on electric bills. See *Ross v. City of Geneva*, 43 Ill. App. 3d 976, 977-78 (1976). However, the ordinance imposing the surcharge *was* "publicly debated, passed and published in the local newspapers." *Ross*, 71 Ill. 2d at 37 (Underwood, J., dissenting). In any event, when the city first specified the nature of the fee, and identified it as a separate charge on a bill, the representative plaintiff immediately filed suit. In *Ross*, this court affirmed the judgment of the appellate court, which had held that the claims were not barred. *Ross*, 43 Ill. App. 3d at 985 (noting that plaintiff sought "equitable relief" by way of "the imposition of a constructive trust on, and the restitution of, funds collected without statutory authority over a period of 13

years"). The *appellate* court held that the statute of limitations did not apply to plaintiff's "equitable claim." In *Ross, this* court did not discuss or decide whether legal or equitable time-bar principles applied, apparently because defendant raised only the applicability of *laches*. See *Ross,* 71 Ill. 2d at 34. We note that this court's rather abbreviated analysis of the *laches* issue in *Ross* might as easily accommodate application of the discovery rule within the framework of a statute of limitation analysis. In essence, the majority believed that the plaintiff did not have all the relevant facts necessary for recognizing and prosecuting his claim, and he was not remiss in failing to acquire them. Therefore, the discovery rule would have salvaged plaintiff's claim even under a statute of limitation analysis.

We are not, of course, confronted with similar facts in this case. Appellants were well aware of the character of the fee they were paying. The relevant *facts* were hardly "unknown and inherently unknowable." See *Clay,* 189 Ill. 2d at 612 (discussing application of the discovery rule). Moreover, the legal basis for a successful constitutional challenge of the statute was readily ascertainable by reference to a well-established precedent: *Pioneer Trust & Savings Bank v. Village of Mount Prospect,* 22 Ill. 2d 375, 380 (1961) (applying the "specific and uniquely attributable" test). That a basis for constitutional challenge existed was readily recognized by Sundance when it filed its action (subsequently dismissed) in 1988. In short, the facts of *Ross* are not comparable to those at issue in this case.

Beyond that distinction, this court in *Ross* neither considered nor decided which of the two time-bar principles should be applied. That issue *was* decided, albeit incorrectly, by the appellate court.

In *Ross,* the appellate court appears to have rejected applicability of the statute of limitation, in favor of a

*laches* analysis, at least in part because the plaintiff clothed his remedial prayer in the guise of a request for imposition of a constructive trust. As previously noted, this court *has* applied a statute of limitation to an action for constructive trust. *Hagney*, 147 Ill. 2d at 462. Why should choice of legal nomenclature dictate the result where the claim, no matter what we call it, is in essence simply a claim for refund? The potential for arbitrary and manipulative pleading in this area is obvious from a cursory examination of Sundance's complaint, wherein theories which Sundance now *admits* are both legal and equitable are advanced in an attempt to obtain essentially the same relief, *i.e.*, return of fees paid.

In addition to counts I and II of plaintiff's complaint, which sought a writ of *mandamus* and a declaratory judgment respectively, count III of plaintiff's complaint in this case was entitled "restitution, assumpsit, unjust enrichment, and recovery of payments." These are the theories which Sundance now concedes are "at law." It would appear, therefore, to the extent that such a distinction retains significance—and under the facts and circumstances of *this* refund action we find that it retains none—at least some of the bases of plaintiff's action are ones "at law," subject to a statute of limitation.

We deem refund actions such as the one before us "civil actions," subject to the statute of limitation set forth in section 13—205 of the Code, irrespective of any artful pleading designed to cloak the cause in the attire of equity. Claimants should not be able to manipulate the result by the turn of a phrase, thereby avoiding the relevant statute of limitation which we believe the legislature meant to apply in this context.

Although we believe that the plain and unequivocal language of section 13—205 alone would render it applicable to appellants' cause of action, we find further support for that view in the more stringent statutes of

limitation the legislature has seen fit to apply to tax refund litigation. As we observed in *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415 (1998), reference to another statute by analogy is a common method of interpretation and has been relied upon by this court on many occasions. In *McNamee*, we quoted from a learned treatise on the subject:

> " 'On the basis of analogy the interpretation of a doubtful statute may be influenced by language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships. By referring to other similar legislation, a court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law.' 2B N. Singer, Sutherland on Statutory Construction § 53.03, at 233 (5th ed. 1992)." *McNamee*, 181 Ill. 2d at 424.

The question here, of course, is whether the legislature intended the catchall statute of limitation in section 13—205 to apply to a fee refund action based upon the grounds stated in plaintiff's complaint. In this respect, we note again the three-year statutes of limitation contained in the Illinois income tax (35 ILCS 5/911(a)(1) (West 1998)), the use tax (35 ILCS 105/21 (West 1998)), the service occupation tax (35 ILCS 115/19 (West 1998)), the retailer's occupation tax (35 ILCS 120/6 (West 1998)), the messages tax (35 ILCS 610/6 (West 1998)), the gas revenue tax (35 ILCS 615/6 (West 1998)), exactions on public utilities (35 ILCS 620/6 (West 1998)), and telecommunications excise taxes (35 ILCS 630/10 (West 1998)), which seem to evince a legislative intent to impose relatively short and certain limitation periods for refund actions.

Further support for this view can be found in the legislature's recent enactment of the Local Government

Taxpayers' Bill of Rights (Pub. Act 91—920, eff. January 1, 2001). Although not controlling in this case, section 65 of that enactment allows local governments to impose statutes of limitation of four years or less on actions for refund of "taxes, interest, or penalties paid in error." We also note with interest the following provision:

"No units of local government are required to refund or credit any taxes voluntarily paid without written protest at the time of payment in the event that a local government tax is declared invalidly enacted or unconstitutional by a court of competent jurisdiction." Pub. Act 91—920, § 65, eff. January 1, 2001.

This provision, which seems to take account of principles espoused in cases such as *S.A.S. Co. v. Kucharski*, 53 Ill. 2d 139, 142 (1972) ("It is well settled that in the absence of fraud taxes *** paid [voluntarily and not under duress] cannot be recovered, even though they are illegal because laid under an unconstitutional law, where there is no statute authorizing such recovery"), further evinces the legislature's intent to restrict the circumstances under which refund actions may be brought. Under this provision, those taxpayers who do not protest payment or, presumably, who do and subsequently waive their protest by failing to properly pursue their claim to conclusion (*City of Springfield v. Allphin*, 74 Ill. 2d 117, 124-25, 127 (1978)) cannot recover.

We believe the legislature intended that a uniform and harmonious system of law apply to refund cases, and the maintenance of two time-bar standards for simple refund cases is inconsistent with that intent. Therefore, subject to the special limitation period applicable to the limited refund action allowed in section 5—916 of the Road Improvement Impact Fee Law (605 ILCS 5/5—916 (West 1998)), the five-year statute of limitation set forth in section 13—205 of the Code of Civil Procedure applies to refund actions in which the claimants essentially seek nothing more than a return of money.

We note two patently meritless arguments appellants advanced to excuse their failure to file actions in a timely manner. First, Sundance claims they would have risked the imposition of sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) had they earlier filed an action challenging the constitutionality of the 1987 enabling act. Sundance posits that the presumption of constitutionality which a statute enjoys prohibited them from challenging the statute. Additionally, Sundance argues that once the appellate court in *Northern Illinois Home Builders Ass'n v. County of Du Page*, 251 Ill. App. 3d 494 (1993), found the 1987 enabling act and the implementing ordinances *constitutional*, fee payers were then prohibited by precedent from bringing a constitutional challenge. This contention is baseless.

The presumption of constitutionality a statute enjoys is a *feature* of litigation over that very issue. In other words, it would not be necessary to accord a statute the presumption in the absence of litigation challenging the statute in question. The party challenging the constitutionality of a statute, of course, bears the burden of rebutting this presumption and clearly establishing a constitutional violation. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999). However, the presumption is obviously not a prohibition against constitutional challenge. If it were, *no* statute could ever be challenged without fear of sanctions.

The preposterous nature of this proposition can be revealed by reference to the language of Rule 137 itself. Here, "good faith" is the operative term. Rule 137 allows for "good-faith argument for the extension, modification, or reversal of existing law *** that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." 155 Ill. 2d R. 137. The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claim-

ants who bring vexatious and harassing actions (*Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 581 (1997)), not to stifle good-faith arguments for the extension, modification, or reversal of existing law. Without such arguments, the law could not change and evolve as indeed it must. Had the plaintiffs in *NIHBA* not made such an argument, appellants would now have no argument at all. Sundance cannot utilize Rule 137 as an excuse for its failure to timely file.

Finally, we address the intervenors' argument that it is unfair to apply a five-year statute of limitation under the circumstances because "builders, even with knowledge that certain [impact] fees are or may be illegal, are pressured into paying them in order to conduct their business, because refusal to pay the fees will have adverse consequences on the completion of the development." According to the intervenors, it would be "nothing short of fool-hearty [*sic*] for a developer to initiate litigation of any sort *** if the builder wants to complete the development." This is so, intervenors submit, because through the course of development the builder routinely needs various municipal approvals. Intervenors suggest that builders are justified in assuming that municipalities would retaliate, if refunds were sought, by stalling or denying necessary approvals and permits.

Ignoring for present purposes the troubling tone of intervenors' rhetoric in this respect, much of which we have chosen to omit because it is as unsubstantiated as it is vitriolic, we must express our basic disagreement with the assumption that local governmental officials, from the executive office to the local building inspector, would likely conspire to penalize fee payers who seek to assert their rights by filing actions challenging the collection of impact fees. We reject this suggestion first, because we believe it is *as* likely that officials, even those of questionable character, would respect those who display a willing-

ness to aggressively assert their interests. Those who are to be reckoned with are unlikely to be victimized. Beyond that observation, we assume that public officials will properly perform their duties (*Moser v. Highway Commissioner*, 114 Ill. App. 3d 137, 139 (1983)), at least in the absence of evidence to the contrary. Moreover, the specter of retaliation, even if it embodies in some instances regrettable elements of substance, cannot coalesce to form the basis of a legal excuse for ignoring the statute of limitation. Myriad litigants in diverse circumstances could use the same excuse for failure to timely file actions. Who, for instance, would ever risk suing the city or village in which he lives or does business? The list of litigants who could assert this excuse might be long indeed. Intervenors cite no authority supporting their argument on this point. We are aware of none. We reject the intervenors' argument.

Based upon the foregoing authorities, and for all the reasons stated above, we find the appellants' action barred by the five-year statute of limitation set forth in section 13—205 of the Code of Civil Procedure, and we thus affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE GARMAN took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

I agree with the majority that the five-year limitations period of section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1996)) applies to this case. However, I believe that this result is best reached through a straightforward application of long-settled legal principles.

The majority opinion fails to do this. Rather, in the course of its "observations" on time limitations in legal and equitable actions, the majority opinion needlessly at-

tacks well-established distinctions between cases at law and in equity. 195 Ill. 2d at 265-74. The opinion also engages in an extended and unnecessary discussion of when actions such as these accrue. 195 Ill. 2d at 266-70, 275-85. Most disturbingly, the majority opinion also implies the impropriety on the part of attorneys who invoke principles of equity. 195 Ill. 2d at 270, 281-82. These discussions are not necessary to resolve this case.

Accordingly, I concur in the judgment of the court, but not in its opinion.

Count III of plaintiff's complaint, as ultimately amended, pled "restitution, assumpsit, unjust enrichment and recovery of payment." This count describes an action at law governed by principles of equity. *Board of Highway Commissioners v. City of Bloomington*, 253 Ill. 164, 173-74 (1911). The controlling principles are quite settled:

> "It is an elemental principle of law, applied in both law and equity courts, that where one person has received money or its equivalent, which belongs to another, under such circumstances that in equity and good conscience he ought not to retain it, recovery will be allowed. [Citations.]
>
> In equity, the theory of recovery is predicated on the imposition of a constructive trust, [citations] and at law, on the basis of a quasi-contract, or contract implied in law. [Citations.]" *Board of Trustees of Police Pension Fund v. Village of Glen Ellyn*, 337 Ill. App. 183, 194-95 (1949).

See generally 1 D. Dobbs, Remedies § 4.2(3), at 579-82, § 4.3(2), at 590-91 (2d ed. 1993). These theories of recovery are parallel. "Both quasi-contract and constructive trust aim at restitution of something that in good conscience belongs to the plaintiff." 1 D. Dobbs, Remedies § 4.3(2), at 590 (2d ed. 1993).

It is equally established: "Where both a court of equity and a court of law have concurrent jurisdiction, the bar of the statute of limitations has been held to be as binding in equity as at law." *Dean v. Kellogg*, 394 Ill. 495, 504 (1946); accord *Rakstiene v. Kroulaidis*, 33 Ill.

App. 3d 1067, 1072-73 (1975); 7 Ill. L. & Prac. *Chancery* § 124, at 347 (1954). Specifically, courts have applied the limitations bar of section 13—205 of the Code of Civil Procedure and its predecessor provisions to constructive trust cases sounding in equity (see, *e.g.*, *Hagney v. Lopeman*, 147 Ill. 2d 458, 462 (1992), citing *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 560-61 (1980)), as well as to implied contract or assumpsit actions at law (see, *e.g.*, *Rohter v. Passarella*, 246 Ill. App. 3d 860, 868 (1993); *Partipilo v. Hallman*, 156 Ill. App. 3d 806, 811 (1987); see *Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 527-28 (7th Cir. 1998)(applying Illinois law)). Therefore, section 13—205 of the Code applies here.

Further, it is long settled when this type of action accrues, so as to start the running of section 13—205 of the Code of Civil Procedure. "Illinois case law firmly establishes that in such actions the statute of limitations begins running when the payment is made." *Pennwalt Corp. v. Metropolitan Sanitary District of Greater Chicago*, 368 F. Supp. 972, 980 (N.D. Ill. 1973)(collecting cases); *Rath v. City of Chicago*, 207 Ill. App. 117, 121 (1917), quoting 2 A. Jacobs, Cooley on Taxation 1508 (3d ed. 1903). The present case is resolved based on settled law.

However, the majority opinion proceeds to state what the appellate court said in *Rath* via lengthy discussion of tax collection cases. 195 Ill. 2d at 266-70, 275-85. Also, the majority opinion, stressing the need for certainty and finality, needlessly attacks the applicability of the equitable defense of *laches* to tax collection cases. 195 Ill. 2d at 270-74. As the above-cited cases, particularly *Dean* and *Rath*, show, the majority opinion's lengthy discussion of tax cases, and especially the opinion's attack on equity jurisprudence, are unnecessary to decide this case.

Even more disturbing, the majority opinion need-

lessly impugns the integrity of attorneys who invoke principles sounding in equity. The majority opinion characterizes such attorneys as "shrewd" advocates, who attempt to "manipulate the outcome" of cases. 195 Ill. 2d at 270. The majority opinion characterizes the pleading of equitable principles as potentially "arbitrary and manipulative." 195 Ill. 2d at 282. The majority opinion exhorts: "Claimants should not be able to manipulate the result by the turn of a phrase, thereby avoiding the relevant statute of limitation ***." 195 Ill. 2d at 282. Not only is such rhetoric unnecessary to decide this case, it impugns the integrity of attorneys who do nothing more than invoke principles of equity.

"An action for money had and received will lie whenever one person has received money which, in justice, belongs to another, and which, in justice and right, should be returned." *Wilson v. Turner*, 164 Ill. 398, 403 (1896). This court recognized that the action " 'embraces a great variety of cases.' " *Wilson*, 164 Ill. at 403, quoting *Allen v. Stenger*, 74 Ill. 119, 121 (1874).

In providing for this action, Illinois courts long ago resolved issues that the law-equity dichotomy presents. The majority opinion's extended discussion and rhetoric do not add to that accomplishment. I concur in the judgment.

JUSTICE McMORROW joins in this special concurrence.